## HAMP LEACH v. THE STATE.

### No. 4124.   Decided November 15, 1916.

**1.—Stealing Ride—Railroad Pass—Other Offenses.**

Upon trial of unlawfully riding on a railroad pass, it was reversible error to admit in evidence other similar offenses at different times and places from that charged in the indictment, the same not being res gestae and the defendant having been identified as the man who unlawfully rode on said railroad pass; besides, the court should have limited said testimony to the question of identity. Prendergast, Presiding Judge, dissenting.

**2.—Same—Evidence—Books—Sunday School.**

Where, upon trial of unlawfully riding on a railroad pass, the defendant claimed an alibi, he should have been permitted to show further that on the date of the alleged offense he was at Sunday school thirty-odd miles away where the State's witness testified he saw defendant on the train on said date with the said pass, and to have introduced the books in which the roll was kept of the members attending said Sunday school, the same having been correctly kept, and which would have shown that defendant was at said Sunday school.

**3.—Same—Evidence—Identification—Other Transactions.**

Upon trial of illegally using a railroad pass, it was error to admit in evidence that the defendant had been seen to ride on the same railroad pass at other times, there being no question as to the identity of the defendant at the time alleged in the indictment, especially where this testimony was not properly limited by the court's charge as requested by the defendant.

**4.—Same—Charge of Court—Weight of Evidence.**

Where, upon trial of illegally riding on a railroad pass, the court's charge on limiting certain testimony, was on the weight of the evidence, the same was reversible error.

**5.—Same—Constitutional Law—Civil Courts.**

See opinion for a discussion of the constitutionality of the act under which defendant was prosecuted, upon which judgment is suspended, as the same question already is pending in the civil courts.

Appeal from the County Court of Hunt. Tried below before the Hon. H. O. Norwood.

Appeal from a conviction of unlawfully riding on a railroad pass; penalty, a fine of one hundred dollars and thirty days confinement in the county jail.

The opinion states the case.

*Clark & Leddy,* for appellant.—On question of other offenses and failure to limit testimony: Branch, Criminal Law, sec. 366.

On question of other transactions: Stull v. State, 47 Texas Crim. Rep., 547; McCleary v. State, 57 Texas Crim. Rep., 139; Wyatt v. State, 55 Texas Crim. Rep., 73; Schwen v. State, 37 id 368· Haney v. State, 57 id., 158.

On question of court's charge: Mourve v. State, 56 Texas Crim. Rep., 445; Branch, Criminal Law, sec. 338.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of other transactions: Wright v. State, 56 Texas Crim. Rep., 356; Johns v. State, 76 Texas Crim. Rep., 303.

On question of school record: Burt v. State, 38 Texas Crim. Rep., 397; York v. State, 57 id., 484; Montgomery v. State, 68 Texas Crim. Rep., 78.

DAVIDSON, JUDGE.—Appellant was convicted of riding on the pass of J. R. Ratliff, his punishment being assessed at a fine of $100 and thirty days imprisonment in the county jail.

The State's case is dependent upon the fact that appellant simulated J. R. Ratliff, to whom had been issued a Missouri, Kansas & Texas Railway free pass, and used it under the name of J. R. Ratliff. This was denied by appellant, and testimony introduced showing it not to be the fact. There was testimony introduced by the State over objection of appellant. One of the bills recites that after the State's witness A. M. Kirby testified that defendant rode on J. R. Ratliff's pass on the train of which he was auditor on the 13th of December, 1914, and positively identified defendant as the man who presented Ratliff's pass for transportation, the State asked witness if defendant ever presented that pass at any other time for transportation. Appellant excepted to the introduction of this evidence on the ground that he was charged with using the pass in question on a specific trip from Greenville to Emory, and the evidence offered showed a separate and distinct offense from that for which the defendant was on trial; that it did not in any way tend to connect defendant with the commission of the offense charged; did not tend to show system, or develop the intent of defendant; was not a part of the res gestae of the transaction, and was highly prejudicial and calculated to cause the jury to believe that the defendant was an habitual violator of the law. These objections were all overruled, and the witness testified that the defendant had prior to

said trip from Greenville to Emory rode from Emory to Greenville on December 8, 1914, on the pass of J. R. Ratliff, and that he presented same for transportation as being J. R. Ratliff on that date; and the bill further recites that the State offered in evidence slips identified by the auditor, Kirby, as being recorded by him as auditor, showing that on train No. 12, on December 8, 1914, on the run from Emory to Greenville, pass No. B2089 of J. R. Ratliff was used as transportation between Emory and Greenville; that at the time the State offered said slips in evidence defendant objected for the reasons above stated, setting them out in full. The trial judge approves this by stating one of the contentions of defendant was that the witness could not identify him, and this testimony was admitted to show the number of times the witness had been with defendant, and the opportunity for recognition, and because this is controlled by paragraph No. 5 of the main charge. If it be conceded this testimony was admissible, then it should have been limited to the purpose for which it was introduced, and the court said that was identity. The court says he controls this by subdivision No. 5 of his charge. This reads as follows: "You are instructed not to consider the testimony tending to show that defendant rode on the pass of J. R. Ratliff from Denison to Wichita Falls, as showing an offense charged in this case. The defendant is not on trial for riding on the pass of J. R. Ratliff on other roads of the Missouri, Kansas & Texas Railway Company of Texas, than that from Greenville to Emory, and you should not find him guilty of other offenses." In a general way the court charged the jury they could not convict appellant on the use of the pass from Denison to Wichita Falls, but this transaction was on the Missouri, Kansas & Texas Railway Company between Emory and Greenville, in an entirely different part of the State, and if the court is correct that the testimony was admissible, it was to identify the defendant, as that became a question in the case. This was the trial court's theory of the matter and his reason for permitting the evidence to go to the jury. Wherever testimony is introduced for the purpose of identification of an accused as a means of connecting him with the crime for which he is being tried, this testimony must be limited. The authorities have been collated by Mr. Branch in his work on Criminal Law, section 366. This was a different offense at a different occasion, if appellant used Ratliff's pass. The State's case was, and so submitted to the jury, that he rode on the pass from Greenville to Emory, and this was on the 13th of December. The train auditor, Kirby, identified defendant as the man who rode from Greenville to Emory at that time. The testimony of defendant is to the effect that he did not ride on the train on the 13th of December, going from Greenville to Emory. Quite a number of witnesses were introduced who swore positively to an alibi on that particular day. This evidence was introduced to show that he rode from Emory to Greenville five days before on the same pass. The writer does not believe this testimony admissible either on the trial court's theory

of identification and certainly not on the question of system. System is not involved by this character of testimony. But having admitted the testimony, it certainly should have been limited to the purpose for which it was admitted.

Another bill recites that after Kirby had positively identified defendant as being the party who used Ratliff's pass on December 13th, the witness Lon Bullock was offered by the defendant, and who would have sworn had he been permitted, that on December 13 defendant was at a Baptist Sunday school thirty odd miles from Greenville at 10 o'clock, and was not in Greenville. Other testimony was introduced to show the same fact. One or more of the witnesses testified positively that they were members of that Sunday school, and one or two of them members of the Bible class of which defendant was also a member; that the secretary of that Sunday school kept a roll of attending members each Sunday, and that he was familiar with this book as his sister and his wife had been the secretaries; that he knew their handwriting, and knew of the fact that they kept this book, and knew their means of showing on the book the attendance or absence of each attendant; that those who were absent were marked "a" and those who were present had a straight mark after their name. This indicated their presence or absence at roll call and their attendance or non-attendance upon Sunday school. This matter and what the book contained was offered to be proved by Bullock. The court excluded it. The court says that defendant did not show to his satisfaction that the record was properly or correctly kept, or that it spoke the truth; that the party who made the record was not in attendance upon the court to testify as to the correctness or truthfulness of the same. The sister of the witness Bullock was not present, neither was his wife. The sister had gone to the western part of the State, and perhaps was living in Kent County. It seems the wife of the witness was at home. But if this witness knew the facts as certainly and accurately as did the other two witnesses, there is no reason why he should not have so testified. It is shown by this and another witness these books were correctly kept, and that they were familiar with them and with not only the books themselves and the manner of keeping them, but were thoroughly identified with the whole Sunday school, and one of the Bullocks at one time superintended or was president of the Sunday school. Certainly the question of identity being an issue, here is an alibi which is shown not only by the witness, who stated that defendant was at Sunday school and was not in Greenville at the time, but here was evidence of the secretary's books showing he answered his roll call that day at Sunday school. If the court was of opinion that Kirby had seen the defendant on his train five days before the 13th of December, on the question of identity, this evidence would be contradictory of Kirby. The judge states that it was not proved to his satisfaction that the books were properly or correctly kept, but the witness swears they were, and there is no evidence to the contrary in the record. The State

did not undertake to show that the books were not correctly kept. The court was in error in this matter. Upon another trial this evidence should be permitted to go to the jury along with the other testimony if identity, or defendant's presence on the train on the 13th of the month as testified by Kirby, becomes an issue.

Another bill recites that the witness Connell was offered to prove that his record showed that Ratliff's pass was used from Wichita Falls to Henrietta on November 6, 1914, and that the same pass was used from Denison to Wichita Falls on November 5th, and his record showed that fact; that he was train auditor on said dates, running between Denison and Wichita Falls; that when he was asked whether the defendant was the man who used said pass at that time, appellant objected for various and sundry reasons, which are unnecessary to repeat. These were all overruled, and the witness testified that he had seen this defendant since he had been at the trial, and identified defendant as such party, and was positive of such fact. The court approves this bill with the statement that paragraph No. 5 of the main charge tells the jury that they shall not consider the testimony tending to show that defendant rode on a pass from Denison to Wichita Falls as showing an offense, but this evidence was only permitted to contradict J. R. Ratliff, who had testified that he had not permitted any one to ride on his pass at any time, and this was so stated by the county attorney when he offered the testimony. The charge has already been copied in full on this question. This testimony was not admissible. If appellant did ride on the pass between Henrietta and Wichita Falls, or between Denison and Wichita Falls, it would not serve to identify him on the 13th of December on the Missouri, Kansas & Texas Railway between Greenville and Emory. But the court admitted the evidence to impeach the witness Ratliff, who testified, the judge states, that he did not permit anyone to ride on his pass. The court told the jury they could not convict under this indictment for that offense, but he did not limit it for the purpose for which it was offered. If the witness Connell was correct, appellant was using Ratliff's pass between Henrietta and Wichita Falls some time before he is charged with having used it on the train between Greenville and Emory. It is the same pass, or that was the theory of the State, bearing the same number and same name, it seems. While the court did tell the jury they could not convict him under this indictment, yet he did not tell them for what purpose the evidence could be used. The writer is of the opinion that this testimony is not admissible for any purpose under this record. It could serve but one purpose, so far as the writer can see, and that is to show that appellant was riding on this pass on different occasions. The writer does not understand, however, that the mere fact that defendant is identified fully as being the man by the State's witness with a transaction occurring a month before in a different part of the State could be used to identify him on the date relied upon for conviction. This testimony was not only not admissible, but having been admitted,

it ought to have been limited. However, the limitation of inadmissible testimony does not cure the error in its admission.

The appellant excepted to the court's charge before it was read to the jury and asked special charges, which were refused. A charge asked by appellant was: "You are instructed that the trips testified to by the witness Kirby, that defendant made from Emory to Greenville on December 8th, in which it is claimed that the defendant used Ratliff's pass, can not be used by you to base a conviction, as the indictment in this case charges defendant with having ridden on Ratliff's pass from Greenville to Emory and you can not, therefore, convict him for any other trip than the one alleged in the indictment. If, therefore, you do not believe that defendant rode on said pass from Greenville to Emory on the occasion testified to by Kirby, or if you have a reasonable doubt of such fact, you will acquit him."

He also asked the court to charge the jury that, "The State has offered evidence in regard to other trips which it claimed the defendant used said pass. You are instructed that defendant can not be convicted for any offense other than the trip from Greenville to Emory, and if, therefore, you have a reasonable doubt as to whether defendant rode from Greenville to Emory on the pass of J. R. Ratliff on the 13th day of December, 1914, you will return a verdict of not guilty."

Bills of exception were reserved to the refusal of these charges. The court signs one of the bills as follows: "The request is fully complied with in paragraph No. 5, general charge; and the evidence of this and other trips was admitted for the purpose of showing chance of auditor Kirby knowing and identifying defendant, and said charge does not permit of conviction for riding on pass from Greenville to Emory at any time in two years prior to indictment, as charged in paragraph No. 4 of main charge." The other bill is signed with the statement by the judge, "That other trips were permitted to be proved for the purpose of identifying defendant, while one was permitted after defendant had closed his case, for the purpose of contradicting witness J. R. Ratliff, the owner of the pass, and because said charge does not give the State the chance of a conviction for proving any violation in riding from Greenville to Emory within two years prior to filing indictment." The court charged the jury in his general charge, that if the jury should find that appellant rode on this pass from Greenville, Hunt County, to Emory, Texas, they would convict him. In the fifth clause of the charge they were instructed, as before stated, not to consider the testimony tending to show that defendant rode on the pass of Ratliff from Denison to Wichita Falls as showing an offense charged in this case; that defendant was not on trial for riding on the pass of Ratliff on other roads of the Missouri, Kansas & Texas Railway Company than that from Greenville to Emory, Texas. There were several objections urged to the court's subdivision 5, that it does not specify and properly submit these issues, which we think was correct, and enough has been said without discussing the bills of exception in refer-

ence to the testimony. This charge is on the weight of the testimony. The court charges the jury not to consider testimony tending to show defendant rode on the pass, etc. That assumes that appellant did ride on this road between Wichita Falls and Denison, at least that the testimony tended to show that fact. This is on the weight of the testimony by a great number of cases. Appellant in his testimony denied that he had ever ridden on Ratliff's pass at any time or anywhere. The court informs the jury that this evidence tending to show that he rode on the pass on this particular line of railway and between these two points should not be considered by them as a basis of conviction, but left it before them without any guide or direction as to why or how they should consider it. This charge assumes the testimony was in there to show this fact, when it was a disputed issue that he rode on the pass between those points. However, the evidence was inadmissible. But if admissible to impeach Ratliff the jury should have been so told.

These matters grouped show that appellant has hardly had a fair trial under this record. These matters were of a damaging nature and were introduced showing that appellant was using this pass on several occasions under the State's theory. It was all disputed and denied by appellant's testimony. The State's witness identified him as being the man who rode at the time indicated and relied on by the State, and it was a square issue as to that question. If he did not ride on the pass that day, the State had no case. The State showed that he was on the train by the witness Kirby. He denied this by showing that he was not in Greenville, and could not have been at Greenville on that particular day, but was at a different place thirty miles away. The fact that he may have, in the opinion of the witness Kirby, ridden from Emory to Greenville on the 8th of December, would not identify him as being the man who rode on the 13th in the opposite direction. The witness could have testified that he had previously seen appellant, if appellant showed Kirby did not know him, but as we understand this record, that was not the question. The evidence was to previous use of the pass. Appellant denied that he was on the train; the State's witness Kirby said he was. There is other testimony on this same line, but on another trial the trial court, if it becomes necessary to the ends of justice or fair trial for either side to let in this matter or testimony, it should be strictly guarded and limited so the accused will not be injured in any way by its admission. The charge should properly charge not generally as here but specifically; the jury should be informed for what purpose they can consider such testimony.

There is another very serious question. The writer has not deemed it advisable to discuss the question now, being aware of the fact that the same question is before the civil courts, and doubtless will reach the Supreme Court for final adjudication; that is the constitutionality of the Act, or that portion of the Act under which appellant was indicted for using the free pass of another. The theory is that the Act

is unconstitutional in its being discriminating, granting a right to ride on passes to one class and not another class, and is not only unconstitutional but arbitrarily so. The writer has read the briefs not only of counsel in this case, who are learned lawyers and have occupied high official position, but also a very able and lengthy brief prepared by the Attorney General's Department to be used in a civil case, and but for the fact that the matter is to be determined finally by the civil courts of Texas the writer would take it up and discuss it at length. But for himself he would state that he believes the law to be unconstitutional and in violation of article 10, section 2 of the State Constitution.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE.—The most material question in this case was as to the identity of appellant as the person who rode on the pass at the time he is charged with doing so in the indictment. While the State's main witness, Kirby, identified him as such, he denied it was he and introduced much testimony to show he was not, and to show the State's witness was mistaken as to his identity, or falsely testified to it. Under such circumstances I think there can be no question, under all the authorities, the State could prove by Kirby he saw and identified him on other occasions as the same person, and who at such times rode on said same pass.