Gus McCoy v. The State.

No. 10482.   Delivered April 6, 1927.

Rehearing denied May 11, 1927.

**1.—Murder—Indictment—Filing Nunc Pro Tunc—Held Proper.**

Where appellant moved to quash the indictment because same did not bear the file mark of the clerk, having been regularly returned into court, the clerk was ordered to enter his file mark *nunc pro tunc*, which was proper practice, and the overruling of the motion to quash was not error. See Cauthern v. State, 66 S. W. 96; Skinner v. State, 141 S. W. 231.

**2.—Same—Jeopardy—Discharge of Jury—Did Not Attach.**

Where appellant interposed a plea of former jeopardy, based upon the ground that the court on a former occasion, after impaneling the jury and a plea had been entered, had discharged the jury on account of the sickness of one of the jurors.   Under Art. 680, C. C. P. 1925, this was proper practice, and jeopardy did not attach.   See Arcia v. State, 28 Tex. Crim. App. 198; Abbott v. State, 94 Tex. Crim. Rep. 31; Torres v. State, 91 Tex. Crim. Rep. 387.

**3.—Same—Plea of Jeopardy—Practice in Trial Court.**

Where a plea of jeopardy raises no issue of fact, it is proper practice for the trial court to pass upon the plea, and not to submit same to the jury.

**4.—Same—Continuance—Discretion of Court—Properly Exercised.**

Where a motion for a continuance is made on account of the absence of witnesses, and the qualification of the court to appellant's bill complaining of the refusal of the continuance, states that such material witnesses as were absent, appeared upon the trial, no error is shown.   According to the bill as qualified, the court did not abuse its discretion in refusing to grant the motion.

**5.—Same—Evidence—Bill of Exception—Incomplete—No Error Shown.**

Appellant complains of the admission of testimony as to the habit of deceased of carrying a purse with change in it, on his person, and that his purse was not found after the homicide.   The bill presenting this matter is not complete, because it fails to set out any of the surrounding facts to enable this court to determine its merits.   The court qualified the bill with the statement that the testimony was admitted upon the issue of robbery, as the motive for the homicide.   As presented, the bill shows no error.

6.—Same—Evidence—Hat of Deceased—Properly Introduced.

Where, on a trial for murder, the theory of the state being that deceased was killed by being struck on the head with a stick, that of appellant that he was kicked by a horse, there was no error in permitting the introduction of the hat worn by deceased at the time of his death as tending to solve this issue.

7.—Same—Evidence—Qualification of Bill—No Error Shown.

Where appellant complains of the refusal of the court to permit him to prove by a state witness that said witness had employed a man named Roberts, a private detective, to aid in the prosecution, as evidence of the animus of the witness, and the court's qualification to the bill states that the testimony was admitted, and the bill fails to show that the testimony given by said witness was damaging to the accused, no error is shown, at least no material or hurtful error.

8.—Same—Evidence—Error in Admitting—Not Shown.

Where the state was permitted to prove that it was the custom of the deceased to carry money in a purse on his person, and that after his death the money and purse were missing, such testimony would not ordinarily be admissible, unless the custom was shown to have been known to appellant, but in this case, there being a conflict in the evidence as to the cause of death, the state contending that deceased was murdered in the perpetration of robbery, and appellant's bill failing to show that the testimony, under the facts, was not admissible, the presumption will be indulged that it was properly received.  See Bozanno v. State, 60 Tex. Crim. Rep. 507, and other cases cited.

9.—Same—Evidence—Order of Introduction.—Within Discretion of Court.

Appellant complains of the court having permitted the recall of a witness after the state had closed, and before the appellant had finished with his testimony, and in allowing the state to introduce in rebuttal evidence which could have been introduced in opening the case, no error is shown.  This matter was within the sound discretion of the court, and the bill shows no abuse of it.  See Art. 642, C. C. P. 1925, Barnard v. State, 87 Tex. Crim. Rep. 365, and other cases cited.

10.—Same—Evidence—Rebutting Alibi—Properly Received.

Where, on a trial for murder, the homicide having occurred at Jefferson, Texas, about 5 o'clock on a Monday morning, appellant in support of his claim of an alibi, testified that he took a woman to the hospital in Shreveport, Louisiana, on Sunday night, at 10 o'clock, preceding the homicide, there was no error in permitting the state to introduce the register of the hospital, which showed that the woman was admitted on Monday night at 10 o'clock, following the homicide.

11.—Same—Evidence—Admissibility of Book of Record—Rule Stated.

One of the exceptions to the rule excluding hearsay testimony, is that which sanctions the receipt in evidence of "regular entries in books of record."  To entitle its receipt in evidence the entry should be regular, that is, it should be made in the course or a part of a system of entries, and not a casual or isolated one, and it should be contemporaneous.  See Wigmore on Evidence, Vol. 2, Secs. 1521-1533, and same, Vol. 3, Secs. 1647-1650.

**12.—Same—Continued.**

Proof of the predicate should be made by the best evidence available, but, if the entrant is absent from the jurisdiction of the court, proof may be made by another, but it should be shown that it was the habit and custom of the absent entrant to make accurate and proper entries. See Wigmore on Evidence, Vol. 2, Sec. 1521, and Leach v. State, 80 Tex. Crim. Rep. 376. An entry made by a public officer in pursuance of his duty, may likewise be received. See Wigmore on Evidence, Vol. 3, Sec. 1632.

**13.—Same — Evidence — Examined Copy of Entry in Register — Properly Admitted.**

Where the state had offered in evidence an entry in the identified record of the charity hospital of Shreveport, there was no error in excusing the witness and permitting him to take the record, which was a public record, and under the court's direction, with the aid of counsel and witness causing an *examined copy* of the entry to be made and introducing in evidence this examined copy in lieu of the original. See Greenleaf on Evidence, Sec. 91; Wigmore on Evidence, Vol. 1, Sec. 189.

ON REHEARING.

**14.—Same—Filing Indictment—Nunc Pro Tunc—Proper Practice.**

On rehearing appellant insists that we were in error in our original opinion in holding that the court was authorized to order the clerk to file the indictment nunc pro tunc, and further that the minutes failed to show its proper presentment. As qualified by the court, his bill complaining of this matter does not show error. Upon a proper showing even at a subsequent term, the record may be amended so as to show the presentment of the indictment. See Burnett v. State, 14 Texas, 456, and other cases cited in opinion on rehearing.

**15.—Same—Discharge of Jury—With Consent of Accused—No Jeopardy.**

Where appellant complains of the discharge of a former jury after plea entered, on account of the illness of one of the jurors, and pleads jeopardy, thereon, the recital in the plea itself that appellant agreed to the discharge of the jury, renders the plea insufficient on its face, and authorized the court to decline to submit it to the jury.

**16.—Same—Evidence—Of Animus—Too Remote—Properly Excluded.**

Where Roberta Roberts had given damaging testimony against appellant, there was no error in excluding testimony that her husband was a private detective, and had been employed to assist in the prosecution, nothing in appellant's bill complaining of the matter showing that the employment of her husband had in any manner influenced the testimony of said witness, or that she knew that her husband was in any way interested in the prosecution.

**17.—Same—Bill of Exception—Prepared by Court—Practice on Appeal.**

Where a bill of exception, prepared by appellant, is qualified by the court, and on objection being made to the qualification, the court prepares a bill in lieu of the one presented to him, on appeal the bill prepared by the court will control, in the absence of a bystander's bill.

**18.—Same—Evidence—Held Sufficient.**

A most careful consideration of the evidence in this case, while same

is conflicting, finds us unable to say that the jury was not warranted in their verdict, and no reversible errors being discovered in the record, the motion for rehearing must be overruled.

Appeal from the District Court of Marion County. Tried below before the Hon. R. T. Wilkinson, Judge.

Appeal from a conviction of murder, penalty life imprisonment in the penitentiary.

The opinion states the case.

*E. B. Lewis* and *J. M. Singleton* of Jefferson, for appellant.

*P. G. Henderson,* *J. H. Benefield* of Jefferson; *Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder, punishment fixed at confinement in the penitentiary for life.

Early in the morning of Monday, the 28th of July, 1924, J. W. Rowell, Sr., a man of about ninety years of age, while out in the lot, received blows upon the head which rendered him unconscious, in which condition he remained until his death which soon followed from the effect of the blows. The state took the position that the appellant was the offender and that the motive was robbery. Appellant interposed the defense of alibi, claiming to have been in the town of Shreveport, Louisiana, at the time the deceased was injured.

From bill No. 1, as qualified, it appears that at the previous term of court a motion to quash the indictment was made upon the ground that there was no indictment returned. Upon the hearing of the motion it was shown that the indictment was regularly returned into court, but that the clerk failed to place his file mark upon it. The court overruled the motion and directed that the clerk enter his file mark *nunc pro tunc.* There was no error in overruling the motion when it was renewed upon the present hearing. Cauthern v. State, 66 S. W. 96; Skinner v. State, 141 S. W. 231.

Appellant interposed the plea of former jeopardy based upon the ground that the court, on a former occasion, after impaneling the jury and the plea had been entered, had discharged the jury on account of the sickness of one of the jurors. This is authorized under certain circumstances by Art. 680, C. C. P., 1925, and from the bill it appears that the juror was sick and that his discharge was with the express consent of both appellant and his counsel. Therefore, no error is shown. Arcia v.

State, 28 Tex. Crim. App. 198; Abbott v. State, 94 Tex. Crim. Rep. 31; Torres v. State, 91 Tex. Crim. Rep. 387.

The complaints in bills Nos. 10 and 11 of the failure to receive certain evidence and to submit the issue raised by the plea of former jeopardy to the jury show no error for the reason that the court properly held that the plea itself raised no issue of fact.

An application for a continuance was made and overruled, as shown by bill No. 3. Apparently it was a subsequent application. As qualified, the bill shows that such material witnesses as were absent and for whom diligence had been used, appeared upon the trial. According to the bill as qualified, the court did not abuse its discretion in refusing to grant the motion.

It appears from bill No. 4 that state's counsel asked the witness T. D. Rowell the following question:

"State whether or not you know that purse had been found."

The witness answered:

"No, sir; it was never found. He always changed his purse when he changed his clothes, and when he would go out to work and change his clothes he would change his purse, and when he changed back he would change his purse because he always had negroes around and he always changed his purse."

Objection to this question and answer was made upon the ground that it was not admissible unless it was shown that appellant knew the custom of the deceased. In qualifying the bill the court stated that it was received in connection with other evidence upon the issue of robbery as the motive for the offense. The bill is quite meager and as qualified shows no error. It fails to give any of the surrounding facts such as would enable the court to determine its merits. Especially is this true from the accepted statement in the qualification that there were other facts introduced on the issue of motive. Nothing in the bill discloses whether the appellant was acquainted with the other facts or what they were, nor does it appear that the appellant did not know of the habits and customs of the deceased. This omission is not supplied by the mere recital of the ground of objection. Some further remarks on the subject are made in the discussion of bill No. 7.

From bill No. 5, as qualified, it appears that for many years it had been the custom of the deceased to go to the barn very early every morning to feed his horse; that he was found early in the morning coming from the direction of his lot, wounded and unconscious. The bucket in his hand was crushed and his fingers bruised, and upon the side of his head there were deep wounds.

The condition of the bucket and his hand indicated an effort to ward off the blows. From some of the testimony the suggestion came that his injury was due to a kick of the horse. It was the theory of the state that the wound was inflicted by a stick in the hands of the appellant. At the barn was found a long stick with blood stains upon it. The hat worn by the deceased at the time of his injury was exhibited to the jury over the objection of the appellant. The hat was without blood stains, but its condition was such as, in the opinion of the learned trial judge, tended to solve the controverted issue mentioned, namely, whether the blow was due to a kick of the horse or the striking with a stick by the appellant. It is well settled that under such circumstances the testimony mentioned was not improperly received. See Branch's Ann. Tex. P. C., Sec. 1855, and the precedents cited; also Trigg v. State, 99 Tex. Crim. Rep. 376.

It appears from bill No. 6 that while T. D. Rowell was testifying in behalf of the state he was asked on cross-examination by appellant's counsel, the following:

Q. "Do you know a party named G. W. Roberts?"

A. "Yes, sir."

Q. "Isn't it a fact that you had employed him as a detective?"

The objection to this question was sustained. According to the bill, the witness would have given an affirmative answer and would have stated that Roberts had been active in the prosecution. From the bill it appears that appellant contended that the materiality of this testimony consisted in the fact that Roberts' wife had given testimony favorable to the state and that the answer expected would have borne upon the animus of the wife of Roberts. In qualifying the bill the court said that he believed the testimony was later admitted on the trial. This qualification would seem to nullify the bill, if it otherwise had merit. However, it appears that Roberts was not a witness in the case. Moreover, the procedure of the nature mentioned is of doubtful validity. If Roberts had testified or his wife had testified, the inquiry of either might with propriety have been made. So far as the record shows the inquiry might have been available as bearing upon the animus of the witness Rowell. However, the bill fails to show that he gave any damaging testimony against the accused, and further, it affirmatively appears that the court was advised that the testimony was desired for a different purpose and not to discredit the witness Rowell. As the matter is here, we think it shows no error; at least, no material or hurtful error.

From bill No. 7 upon the subject of the custom of the deceased, it appears that the witness named above was asked by state's counsel:

Q. "Do you know anything about your father collecting money?"

A. "Yes, sir; I do."

Q. "How did he do it?"

A. "Well, I settled with him on the first of every month. I paid he and myself off the first."

Objection was made upon the ground that it was wholly immaterial. This was not admissible until it was shown that the appellant had knowledge of it. The remarks touching bill No. 4 is also pertinent to this one. See Murf v. State, 281 S. W. 1077; Coulson v. State, 277 S. W. 135; Baxter v. State, 81 Tex. Crim. Rep. 234; Art. 2237, Vernon's Rev. Civ. Stat., 1925; Art. 667, Vernon's Tex. C. C. P., Vol. 2, p. 364, note 23. Besides, the fact that it was the custom of the deceased to possess money and carry his purse in his pocket, and its absence at the time he was found after the injury might, under some circumstances, have been very cogent testimony upon the issue suggested in the qualification of Bill No. 4. See Mœhler v. State, 98 Tex. Crim. Rep. 235; Lovel v. State, 93 Tex. Crim. Rep. 615. Apparently it was admissible as tending to rebut the theory that the deceased was injured by the kick of a horse. In the absence of something in the bills showing that the peculiar circumstances were such as to render the testimony inadmissible, the presumption must be indulged that it was properly received. See Bozanno v. State, 60 Tex. Crim. Rep. 507; Nowels v. State, 100 Tex. Crim. Rep. 476; Dover v. State, 102 Tex. Crim. Rep. 121.

Bill No. 8 complaining that the court permitted the recall of a witness after the state had closed its evidence in chief and before the appellant had finished with the introduction of his testimony shows no error. This was within the discretion of the trial court, and the bill shows no abuse of it. The same may be said of the complaint in bill No. 13 of allowing the state to introduce in rebuttal evidence which could have been introduced in opening the case. Art. 642, C. C. P., 1925; Barnard v. State, 87 Tex. Crim. Rep. 365; Vineyard v. State, 96 Tex. Crim. Rep. 401; Johns v. State, 98 Tex. Crim. Rep. 127.

According to bill No. 9, in support of his theory of alibi, appellant claimed to have assisted in taking Annie May Smothers to the Charity Hospital in Shreveport, Louisiana, for treatment on Sunday night preceding the homicide on Monday following.

The state introduced Dr. J. M. Moseley and exhibited to him what purported to be a record of the Charity Hospital of Shreveport, containing an entry to the effect that "Annie May Smothers came into the hospital at Shreveport, Louisiana, at 10 o'clock p. m., July 28, 1924," which was Monday night. As a predicate for the introduction of this record, Dr. Moseley testified that the record was made by Dr. Workhouse, who was at that time working at the Charity Hospital as an interne and that it was his duty to make a record of the date that every patient entered the institution, giving the name of the patient and the injuries or disease complained of. He testified that the entry was in the handwriting of Dr. Workhouse, with which the witness was familiar, and that Dr. Workhouse was not, at the time of the trial, in the employ of the hospital mentioned, but resided in the State of Mississippi; that the making of such entries was required of Dr. Workhouse. The witness said that at the time the entry was made and at the time of the present trial he was superintendent of the Charity Hospital at Shreveport, Louisiana, and controlled the records thereof; that the Charity Hospital was a state institution. To the introduction of the part of the record mentioned the appellant objected for the following reasons:

"Because the defendant should have the right to be confronted with the witnesses against him and because the witness testified that he did not make the record offered in evidence, and was not custodian of the record. And further, because that the record entry is hearsay, having been made by some other person than the witness."

We think the testimony was not subject to the objections addressed to it. One of the exceptions to the rule excluding hearsay testimony is that which sanctions the receipt in evidence of "regular entries in books of record." Wigmore on Evidence, Vol. 2, Secs. 1521-1533. To entitle its receipt in evidence, the entry should be regular, that is, it should be made in the course or a part of a system of entries and not a casual or isolated one and it should be contemporaneous. See also Wigmore on Ev., Vol. 3, Secs. 1647-1650. Proof of the predicate should be made by the best evidence available, but if the entrant is absent from the jurisdiction of the court the proof may be made by another. See Wigmore on Ev., Vol. 2, Sec. 1521; also Leach v. State, 80 Tex. Crim. Rep. 376. An entry made by a public officer in pursuance of his duty may be likewise received. Wigmore on Ev., Vol. 3, Sec. 1632. As a predi-

cate for the introduction of the entry as above defined, where the person who made it is not available as a witness, it should be proved that it was the habit and custom of the entrant to make proper and accurate entries. If, however, the entry was made by a public officer in the pursuance of his duty as such, proof of habit or custom is not essential, but to be supplied by the presumption in favor of the regularity of the acts of public officers. The hospital was a state institution and it was the duty of the entrant to make a true entry of the name and date that each patient was received therein. In the bill there is no objection upon the ground of an absence of proof of the habit or custom of Dr. Workhouse to make proper and accurate entries. If the record was a public one, the predicate was sufficient; but if not a public record, the court was not in error in refusing to sustain the objections made, there being no objection upon the ground of the absence of proof of habit or custom, that objection is not available on appeal.

Both the deceased and appellant resided in the town of Jefferson, the county seat of Marion County. Marion is a border county adjoining Louisiana. The distance from Jefferson to Shreveport, Louisiana, is not, so far as we have discovered, definitely stated. However, it does appear from the testimony that they were connected by rail and by road traversed by automobiles. Appellant had lived all his life in Jefferson. According to his testimony, he came from Shreveport to Jefferson on Thursday night preceding the homicide on Monday morning. After spending the night and part of the following day with Louis Stephens, they went to Shreveport, traveling partly on foot and partly by catching rides in automobiles and on freight trains, reaching Shreveport about 7 o'clock on Friday evening. In his testimony he described his movements and those of his companion in Shreveport, asserting that on Sunday night he assisted in taking Annie May Smothers to the Charity Hospital. Witnesses for the state testified that he was seen in Jefferson on the morning on which the homicide took place. The entry on the record of the Charity Hospital to the effect that Annie May Smothers became an inmate of the hospital at 10 o'clock at night on the 28th of July is in conflict with the appellant's theory to the extent that the hospital entry appears to have been made on Monday night, and he claims that the woman was taken to the hospital on Sunday night. It seems obvious that the entry on the hospital record is not necessarily incompatible with the appellant's presence at Jefferson at the

time of the homicide. Apparently the distance between Jefferson and Shreveport is not such as to preclude his presence at Shreveport on Sunday night at 10 o'clock and at Jefferson on Monday morning at 5 o'clock; nor does it preclude his presence at Jefferson on Monday morning and at Shreveport on Monday night. As stated above, there is much other testimony combatting the appellant's theory of alibi, including the testimony of two witnesses to the effect that appellant admitted that he struck the deceased; nor is the hospital record the only evidence that Annie May Smothers entered the hospital on Monday night. The police records introduced in evidence and the testimony of the arresting officers are to the same effect.

According to bill No. 14, after Dr. Moseley had testified as shown in bill of exceptions No. 9, identifying the entry in the record of the Charity Hospital of Shreveport, Louisiana, the court was not ready to rule on the admissibility of the entry mentioned in bill No. 9. The witness, who resided in Louisiana, insisted on returning and taking with him the record which he said was a public record. Under the court's direction and with the aid of counsel and witness, an *examined copy* of the entry was made. The witness took the original record with him, leaving the examined copy. The complaint of the use of the latter in lieu of the original when the court finally ruled the entry admissible in bill No. 14 is deemed not well founded. Greenleaf on Evidence, Sec. 91; Wigmore on Evidence, Vol. 2, Sec. 1273; Starkey on Evidence, Vol. 1, 189.

Bill No. 15, complaining of the alleged improper argument, as qualified, shows no error.

Bills Nos. 16 and 17 refer to the testimony of the witness Allen touching a certain affidavit made against him, the contents of which affidavit the bills fail to reveal.

The judgment is affirmed.                    *Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant calls attention that he was insisting on the quashal of the indictment, not only on the ground that it bore no file mark, but also because the court's minutes failed to show its proper presentment, thereby failing to comply with Art. 394, C. C. P. The bill of exception complaining of the court's refusal to quash the indictment bears the following explanation from the trial judge:

"At a previous term of court the same motion was made to

quash and it was ascertained from the testimony of the clerk that the indictment had been properly returned by the grand jury at that time and received by me in open court and delivered to him by me on December 9, 1924, but no file mark had been placed on it and had been in his possession since then all the time and defendant was served with a copy on December 11, 1924. The clerk also testified that the grand jury appeared with a quorum present and returned the indictment in open court through their foreman. All this proof was made upon the motion to quash the indictment and I directed the clerk to file the indictment as of the 9th of December, 1924, and directed the District Attorney at the time to prepare an order showing that the indictment had been presented, but this order was never prepared nor entered at that term. When the motion to quash was again presented the same proof was offered as at the previous term and I again overruled the motion and directed the prosecuting attorney to prepare the order, which was done, and the record at this time contains an order showing the presentment of the indictment at the previous term of court."

Upon a proper showing, even at a subsequent term of court, the record may be amended so as to show the presentment of the indictment. Burnett v. State, 14 Texas, 456; Rhodes v. State, 29 Texas, 188; Denton v. State, 3 Tex. Crim. App. 635; Townsend v. State, 5 Tex. Crim. App. 574; Cox v. State, 7 Tex. Crim. App. 495; DeOlles v. State, 20 Tex. Crim. App. 145; Serrato v. State, 74 Tex. Crim. Rep. 413, 171 S. W. 1133; Tyson v. State, 14 Tex. Crim. App. 388. While Loggins v. State, 8 Tex. Crim. Rep. 434, is not upon the exact point the observations of the court found therein are interesting. The record in the present case seems to have been amended in the manner indicated as proper by the foregoing authorities. We must accept the statement of the court in his explanation to the bill as correct and as showing that the evidence before him authorized his act, and must also presume the order entered effected the desired amendment. If the sufficiency of the evidence to authorize the act is questioned by appellant or the sufficiency of the amended record is challenged the burden is on appellant to bring the evidence and order before this court by proper bill before those questions could be reviewed.

Appellant renews his contention that the court committed error in not submitting to the jury his plea of former jeopardy. The plea shows upon its face that the former jury was dis-

charged with appellant's consent, the only effort seeking to avoid the effect of such consent being an averment that appellant gave his consent without having an opportunity to discuss the matter with his counsel and without knowledge of the import or gravity of the agreement. We think the recital in the plea that appellant agreed to the discharge of the jury renders the plea insufficient on its face and authorized the court to decline to submit it to the jury.

Appellant insists with much earnestness that the failure of the court to permit him to prove by T. D. Rowell, a son of deceased, that he had employed one G. W. Roberts as a detective was such error as demands a reversal. As stated in the original opinion, appellant makes no contention that he desired this evidence as in any way affecting the testimony of the witness Rowell, but the bill expressly shows that he was insisting on it as affecting the testimony of Roberta Roberts, the wife of G. W. Roberts. The latter did not testify. Roberta did give damaging evidence against appellant. If the bill had shown that appellant expected to prove that compensation to her husband for his work in the case was based on the contingency of a conviction, and it appeared that the wife was aware of this fact, there would appear some merit in appellant's contention, but the bill does not so show. Roberta's evidence is to the effect that she married Roberts at the last term of court, long after the killing of deceased, and she testified if her husband was employed as a detective, or was in any other way interested in the prosecution she had no knowledge of it. With the record in this condition we do not feel authorized in holding that the ruling of the court in the matter complained of was such an error as calls for a reversal. The effect of the evidence expected depended on too much speculation and too many contingencies to justify such conclusion.

We have again examined the bill of exception complaining of the court's action in overruling appellant's application for continuance. The bill as originally prepared by appellant was qualified by the court. Objection having been made to the qualification the court very properly prepared a bill in lieu of the one presented to him. In the absence of a bystander's bill controverting the one prepared by the court we are controlled by the recitals in that bill. It appears therefrom that the application for continuance was appellant's second application, and that the testimony of some of the absent witnesses was supplied by others who were present and the proposed testimony of other absent

witnesses became immaterial or cumulative in the development of the case.

Appellant renews other questions in his motion for rehearing. None of them has been overlooked. One relates to the admission in evidence of certain entries on the hospital records in Shreveport. This point had our most careful consideration on the original submission and nothing could be added to what was said in disposing of it in our former opinion. We think the question was there properly decided.

We have again, at the suggestion of appellant, re-examined the evidence. The case is one of conflicting testimony demanding the determination of the credit of witnesses and the weight to be given their testimony. This province is properly lodged with the jury. They have solved the conflicts in favor of the state. This court is in no position to overturn their judgment in the matter. We cannot say the jury was wrong in accepting as true incriminating evidence against appellant because it was denied or assailed by him. The evidence in the record, if true, justified the verdict.

We commend the attorneys who were appointed by the court to defend this unfortunate appellant for their zeal in his interest. Realizing their obligations to him under the court's appointment they have overlooked nothing which could be properly interposed in his behalf. We have been unable to agree with them in their contentions, and believing the case to have been properly disposed of in the affirmance of the judgment, the motion for rehearing is overruled.

Morrow, P. J., not sitting. *Overruled.*