## W. C. WELCH v. THE STATE.

No. 21424. Delivered May 21, 1941.
Rehearing Denied October 8, 1941.
Leave to File Second Motion for Rehearing Denied November 5, 1941.
Appealed to United States Supreme Court.
Order of United States Supreme Court Denying Petition for
Certiorari Filed March 6, 1942.

The opinion states the case.

*Herman Wright* and *Chris Dixie,* both of Houston, (*Gunter & Watson* and *Alto V. Watson,* all of Port Arthur, and *King C. Haynie,* of Houston, of counsel on motion for rehearing only), for appellant.

*E. W. Easterling,* of Beaumont, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State on submission.

KRUEGER, Judge.

This is a case of kidnapping for extortion. The punishment assessed is fifteen years in the State penitentiary.

The prosecution arose under Art. 1177a, P. C.

The record is quite voluminous, the statement of facts consisting of over five hundred typewritten pages. From these, we gather the following facts:

About 7:00 o'clock p. m. on December 7th, 1939, while Fred Mingle and his family, consisting of his wife and twelve-year-old son, Irwin, were seated around the family fireside, there suddenly, and without previous notice, appeared in their living room, a man, with a drawn pistol in his hand. The man was disguised, with gauze pasted over his eye with tape, with a little black hat crushed in and pulled over his eyes, and with a

brown coloring or substance on his face. This man, both Mingle and wife testified, was the appellant.

The intruder bound, tied, and blindfolded all occupants of the room. Fred Mingle was told to leave Fifteen Thousand Dollars in currency in the garage of Dr. W. C. Welch (appellant) by 6:00 o'clock the next evening, as a ransom for the boy, whom he was then taking with him. The denominations of the currency in which the ransom was to be paid were directed. He ordered that the bills be not marked or the serial numbers taken. He directed that the police be not notified. He threatened violence to the boy if his orders or directions were not carried out. A purse belonging to Mrs. Mingle was lying on a small table in the room. Two hundred and Seven Dollars was taken from this purse.

The boy, Irwin Mingle, was then carried from the house, and out to and into a car parked nearby. Irwin said that, owing to the loose-fitting blindfold, he was able to discern the make and color of the car, and that it was a 1936 or 1937 blue Ford, with a spotlight on it. After driving for some time, the boy was taken from the car, into a house, and there laid on the floor. Entrance to the house was by means of a key in the kidnapper's possession. The kidnapper left, was gone for a short time, and then returned with some burlap. The boy was then gagged with strips of adhesive tape over his mouth, and, by and through the means of a ladder, was placed in the attic of the house. After getting into the attic, the kidnapper laid some boards across the rafters and on these boards were spread pieces of burlap, upon which the boy was placed. His hands and feet were then tied together, and then to braces supporting the roof of the house. The boy was left in this condition. After his abductor had gone, he worked at his bindings for a time and then fell asleep. When he awoke it was morning, because he could hear the chickens cackling and could discern daylight through the attic window. He succeeded in loosening himself and the gag, and began to cry out. A Mrs. Dilworth, a daughter of appellant, who, it developed, lived nearby, and a Mrs. Bailey, a guest in the home of Mrs. Dilworth, heard the cry and answered same. The boy called to them, saying that he was in the attic and that he had been brought there the night before by a small, dark man. The doors to the house were tried and found to be locked. Mrs. Dilworth left Mrs. Bailey to stand guard while she went for help. She first called to Mr. Henry Smith, another neighbor, and told him that a little boy who

was in the attic of the house said he had been kidnapped, and that she wanted Mr. Smith to stay there with Mrs. Bailey while she went for help to open the house. She then went across the field to her father's (appellant's) house, and told him that a little boy who was in the attic of the "Hay" house said that he had been kidnapped and that his name was Irwin Mingle. Appellant then telephoned the parents, telling them that their boy had been found and was in the attic of the Hay house. Appellant accompanied his daughter back to the house, and, with a key in his possession, opened a door to the house. They then began looking for the opening leading to the attic. This was found through a closet, the door to which was locked. Appellant secured a key from another closet door, and with this opened the door of the closet leading to the attic. The boy was liberated. Mr. and Mrs. Henry Smith, Mrs. Bailey, Mrs. Dilworth, and the appellant were present at the time.

According to Mrs. Smith, the boy, while yet in the attic, and before he was liberated, told of the kidnapping and of his being placed in the attic, and described the kidnapper as being a dark man, kind of large, kind of old, wearing glasses, and with one eye plastered up with tape. Upon the trial of the case, the boy described his abductor as being a man with a patch over his right eye, a little man, short, dark, and looking like a Mexican.

The house where the boy was kept a prisoner was a small residence belonging to a Mr. Hay, who had recently built it. It was unoccupied at the time. It was situated some three or four blocks from, and was in the same vicinity of, appellant's home. The house and yard could be seen from appellant's home.

As to what happened at the home of Fred Mingle after the abduction of the boy, we find that, after freeing himself and wife, they set about to plan a course to pursue. Pursuant to getting the ransom money, he first contacted his brothers and banker friends. The office of the Federal Bureau of Investigation in Dallas was called by telephone. The agent in charge instructed that the orders of the kidnapper be obeyed not to call the police, and said that an agent of the department would be upon the scene by morning. Agents of the department did arrive early the next morning, and began working on the case. As soon as knowledge of the fact that the boy had been freed was ascertained, these agents withdrew official connection with the investigation, it appearing to them that no federal offense

had been committed. Local officers and the sheriff and his deputies then took over the investigation. These further facts were then developed:

The boy was shown the appellant's car and was given a ride therein, as a result of which he was able to express the opinion that it was the same car in which he was abducted.

A search of appellant's premises revealed the following: Burlap was found in the garage, and some boards were found under appellant's home. These materials corresponded to the burlap and boards in the attic of the house and upon which the boy was laid. A ladder was found at appellant's home, as also a black crushed hat. A well between the house and garage on appellant's premises was dragged, and there was recovered therefrom a spool or partial spool of adhesive tape, which was of the same width and general description as that used in the kidnapping, and with which the boy was gagged. In appellant's house, and secreted therein, was found certain currency, and upon his person, when arrested, was also some money, all amounting to about One Hundred Fifty Dollars in currency.

About three weeks after the kidnapping, some small boys happened to find, accidentally, a pistol in appellant's garage. There was evidence tending to identify it as the one used by the kidnapper.

Appellant, testifying as a witness in his own behalf, denied the offense or any guilty participation therein. He testified to, and introduced witnesses supporting, the defense of alibi. He admitted possession of the burlap, the boards, the ladder, the hat, and the money, found as a result of the search of his premises. He accounted for the possession thereof, as also for the key with which he opened the house at the time the boy was liberated, in a manner consistent with his innocence. His theory or explanation of the facts incriminating or tending to incriminate him was that the actual kidnapper made use of such matters without his knowledge or consent and to falsely place the blame upon him. Appellant admitted a long and favorable acquaintance and friendship with Fred Mingle, saying he considered him his second best friend. He admitted that Mingle had gone surety upon his bail bond in a federal accusation. He said that he considered Mingle worth Two Hundred and Fifty Thousand Dollars.

The extended statement of facts is deemed pertinent in view of the issues arising under the record.

Appellant has filed an able and exhaustive brief, in which he has grouped his several contentions as reflected in the various bills of exception. We discuss these issues as urged in the brief, without reference to each of the bills of exception.

Appellant contends that, notwithstanding the fact that both Fred Mingle and his wife positively identified appellant as the kidnapper, yet, nevertheless, the State's case was one of circumstantial evidence, and that the trial court erred in refusing to so charge the jury. Appellant's position appears to rest, chiefly, upon the fact that the kidnapper was at all times disguised as described by the witnesses, and that, therefore, their identification was nothing more nor less than a conclusion or opinion of the witnesses. Appellant cites Smiley v. State, 222 S. W. 1108, 87 Tex. Cr. R. 528, as supporting his contention. The Smiley case was one of robbery, occurring at night, with only a momentary observation of the assailant by the prosecuting witness. No previous acquaintance or association between the parties was shown. No details, peculiarities of stature, personal appearance, gaits, habits, traits, tone of voice, or any peculiar article of clothing worn by the accused, were known or testified to by the witnesses. There identification was made, and the witness testified that the accused was his assailant, upon similarity of appearance alone. In such case, this court held that a charge upon circumstantial evidence was required.

In the instant case, the facts are quite different. Mingle and appellant were close friends for over 25 years; he knew appellant's voice; the incident occurred in a lighted room, during which time the witnesses were tied, gagged, and bound by the kidnapper, giving them ample opportunity to observe him and to hear his voice. In addition to these facts, a black hat found in appellant's possession was identified by Mingle as the one worn by the kidnapper.

In the light of these facts, together with the very positive and unequivocal identification of appellant as the kidnapper, by both Mingle and his wife, we are unable to reach the conclusion that this is a case of circumstantial evidence; and, in support of this conclusion, we call attention to the cases of Givens v. State, 34 S. W. 626, 35 Tex. Cr. R. 563; Davis v. State, 15 Tex. App. 594.

Appellant complains of the receipt in evidence of the burlap, the painted board, the ladder, the hat, and the currency, which were found by the officers as a resut of the search of his home and premises by virtue of a search warrant issued after appellant had been arrested. It is insisted that the search warrant was defective in several particulars, chief of which was that no authority existed in law for the issuance of a search warrant in such a case as here presented.

Appellant, while testifying as a witness in his own behalf, admitted the possession of, and the presence on his premises of, the several articles mentioned; and to the introduction of which he objected. The search warrant served the purpose only of a medium by and through which the officers made the search and the discovery of the articles mentioned. Appellant, by his testimony, having admitted all the facts found as a result of the search, he is not in position to complain, and he thereby waived any objection to the validity of the search warrant. Johnson v. State, 118 Tex. Cr. R. 293, 42 S. W. (2d) 421; Due v. State, 123 Tex. Cr. R. 73, 57 S. W. (2d) 849; Bowers v. State, 136 Tex. Cr. R. 387, 125 S. W. (2d) 555, and authorities there cited.

The question, then, of the authority in law for the issuance of the search warrant and the claimed defects therein is not before us and is not decided.

Appellant complains, by Bill of Exception No. 10, of the receipt in evidence of the spool or partial spool of adhesive tape found as a result of dragging a well situated on appellant's premises and located between his residence and garage. The objection to the introduction of this testimony, and the only objection made, was that the well so dragged was not included in, and was not a part of, the premises described in the search warrant as being authorized to be searched, in that the search warrant restricted the search to the appellant's residence and garage. The premises authorized to be searched in the warrant were described as "The residence of W. C. Welch, a garage in connection therewith, and certain out buildings, all situated on the North side of the old Orange Road and on the East side of the Stadium Road, which place one W. C. Welch has charge of:"

The warrant directed the sheriff to search the "place and premises above described and named."

It is appellant's contention that, the well being within the curtilage of appellant's private residence, a warrant, to be sufficient to authorize a search thereof, must, in the description of the premises to be searched, include the well, and that the description in the warrant here used does not do so. In support of his contention, he cites, among other cases, that of McTyre v. State, 113 Tex. Cr. R. 31, 19 S. W. (2d) 49, wherein, he asserts, this court held that the use of the term "private dwelling" or "private residence" in a search warrant did not include outhouses and appurtenances thereto.

The McTyre case, supra, was distinguished in Comeaux v. State, 42 S. W. (2d) 255, 118 Tex. Cr. R. 223, wherein this court held that a description, in a search warrant, as "a certain place and premises, situated in Jefferson County, Texas, described as follows, to-wit:

" 'A private residence No. 1700 Brooklyn Street, City of Beaumont, Jefferson County, Texas, the same being occupied and used by Walter Comeaux and others, as a private dwelling'," was sufficient to authorize the search of a garage some forty or fifty feet from the residence. See Miers v. State, 60 S. W. (2d) 217, 124 Tex. Cr. R. 152.

The conclusion is reached that the rule announced in the Comeaux case, supra, is applicable and controlling here and that the search warrant was sufficient to authorize the search of the well. We call attention to the fact that the question of authority for the issuance of the search warrant was not a part of the objection urged to the introduction of this testimony.

As supporting his defense of alibi, appellant introduced two witnesses, Rambo and Jackson, employees of and in the post office at Port Arthur. These witnesses testified to the effect that, on the night of the alleged kidnapping (December 7th, 1939), and between 7:30 and 8:00 o'clock p. m., appellant was in the post office. This testimony directly supported the appellant, and tended to contradict the State's testimony that the kidnapping occurred at about 7:00 o'clock p. m. on said night. In connection with such testimony, the appellant sought to introduce certain records of the post office, showing that said witnesses were in fact in and at work in the post office at the time so fixed. Such records in no manner tended to shed light upon the issue as to whether or not the appellant was in the post office at that time.

The State's objection to the introduction of said records was sustained and of which complaint is here made by bill of exception. The State made no attack upon the testimony of said witnesses in so far as same related to their being in the post office and at work there at the time so fixed. The witnesses testified, without objection, that the records of the post office showed that they were there at the time. The materiality of the records so offered is, therefore, not shown, and appellant's contention is overruled.

Appellant complains because the State was permitted to prove, by the witness Mrs. Henry Smith (one of the witnesses who discovered the boy imprisoned in the attic of the house, and who was present before and after he was released), that the boy described the kidnapper as "a dark man, that he was kind of large, kind of old and had on glasses, said he had tape on one eye, that one eye was plastered up with tape." Appellant's objection to this testimony was that it was hearsay. The record reflects that this description was given by the boy before his release from the attic, as a part of the conversation in which he told the witness about his having been kidnapped and placed in the attic. The conclusion is reached that such testimony was a part of the res gestae and was, therefore, admissible. See: Castillo et al v. State, 115 S. W. (2d) 413, 134 Tex. Cr. R. 217; Johnson v. State, 252 S. W. 554, 95 Tex. Cr. R. 269. Moreover, appellant, upon cross-examination of of the boy, went into the conversation he had with those present when he was released from the attic of the house and proved by him that, at that time, he told those present about the case, about the man, and what he looked like. Appellant having gone into the matter, he was in no position to complain of the action of the State in proving the conversation by the witness.

While testifying in behalf of the State, Fred Mingle gave a general description of the pistol used by the kidnapper in the commission of the alleged offense. After the close of the evidence, the State received information that a pistol such as described by the witness had been found upon appellant's premises, after the kidnapping. The evidence was reopened, when the following facts were introduced.

The witness Talent, a twelve-year-old boy living about one-half block from appellant's house, testified that, about nineteen days after the alleged kidnapping, while visiting appellant's grandson, at appellant's residence, and while they were playing

in appellant's garage, they climbed up and onto the rafters, and into the loft, and, hidden among some cans, found a pistol, which they delivered to appellant's wife. The pistol was delivered to one of appellant's counsel, by appellant's wife, and in whose possession it had been continuously since that time. Counsel for appellant then produced a pistol, from a brief case in their possession, resting upon a table at which counsel were seated, during the trial of the case. The pistol was then identified by the witness Richards as having been taken from him and out of his "trailer house," where he kept it, about six months prior to the offense. He testified that the appellant knew where he kept the pistol, that he had oftentimes seen, admired, and handled it, and had expressed a desire to have it.

The pistol was introduced in evidence, to which appellant objected as being immaterial and irrelevant because there was no issue in the case that the pistol was in anywise connected with the offense charged. To this contention we cannot agree.

That the kidnapper used a pistol in committing the offense is not disputed. Whether this was that pistol depended upon the description thereof given by Fred Mingle and of the one introduced in evidence. There is no testimony from any witness that the pistol differed materially from that described by the witness. The trial court ordered that the pistol be forwarded to this court, and it is before us as a part of this record. The description the witness gave corresponds, in many ways, with the pistol so introduced. Such testimony was a circumstance to identify appellant as the guilty party, and was, therefore, both material and relevant to the State's case.

The charge on alibi, of which appellant complains, instructed the jury that, if they entertained a reasonable doubt as to whether the appellant was present at the time and place the offense was committed, if any was committed, to acquit him. This charge, under the facts, was sufficient. Winfield v. State, 72 S. W. 182, 44 Tex. Cr. R. 475; McAninch v. State, 179 S. W. 719, 77 Tex. Cr. R. 649; Yarbrough v. State, 45 S. W. (2d) 206, 119 Tex. Cr. R. 361.

The count in the indictment upon which the conviction was predicated alleged the statutory elements constituting the offense charged and was in keeping with that approved in Crum v. State, 101 S. W. (2d) 270, 131 Tex. Cr. R. 631.

The remainder of the bills of exception, although not briefed by appellant, have been examined, and, finding no error reflected therein, are overruled.

From what has been said, it follows that the judgment of the trial court should be affirmed. It is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant has filed a very exhaustive brief treating a number of questions in connection with his motion for rehearing, the most impressive of which is the second ground set out complaining of expressions in the original opinion on the question of identification of appellant as the party who kidnapped the son of Fred Mingle. The opinion, as is usually the case, makes statements which are conclusions of the Judge writing the opinion from the evidence rather than quotations of the exact wording of the statement of facts. Manifestly, this is necessary, otherwise opinions would be entirely too long. It was said that the identification was positive and this statement is challenged. We quote from the evidence of Fred Mingle, statement of facts, page fifteen, as follows: "I know definitely who was in my house on that night, it was Doctor Welch. I say that because I have been knowing him 23 years and I have come in contact with him very frequently, I would know his voice anywhere, and with all his effort to conceal his voice when he got in the hall he had to raise his voice to make us hear him, it was definite to me it was Doctor Welch."

Similar expressions are found at other places in the record. This sufficiently disposes of the second ground and, in like manner, if it were helpful to the jurisprudence of the State, we might proceed to treat each and every one of the nine grounds upon which a motion for rehearing is sought, both on questions of law and of fact.

In addition to the very able and comprehensive brief and motion for rehearing by his attorneys, appellant himself appeared in person and was permitted by the court to argue the

case. The earnestness of his expressions and the insistence with which he presented them would be expected by anyone acting in his own defense. However, it consists almost entirely of efforts to inject into the case testimony not brought forward as a part of the record on the trial of the case below, and, therefore, cannot be considered by this court for any purpose whatsoever.

The very exhaustive opinion affirming the judgment of the trial court sufficiently disposes of all questions properly raised, as we review the record, and a further discussion of them could serve no useful purpose. It is not our custom and we do not here undertake to engage in an argument with counsel for appellant over those questions which have been fully and fairly considered in the original opinion.

The motion for rehearing is overruled.

ON SECOND MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant has presented an application for leave to file a second motion for rehearing, complaining that in both the original opinion and opinion on rehearing we either ignored or overlooked his bill of exception number twelve, in which he asserts error of the trial court in denying the introduction of an instrument called a "cost ascertainment sheet," a record of the post office at Port Arthur, Texas.

It is extremely doubtful whether the bill in question should be considered at all. The document itself is not set out in the bill, but it is stated only that the said document "showed" certain stated things. This is exactly the situation in Martinez v. State, 91 Tex. Cr. R. 576, 240 S. W. 550. There the document offered and rejected was a petition for divorce. The petition was not incorporated in the bill, but it was only stated therein what the petition would have shown. The bill was held bad. See also Garland v. State, 31 S. W. (2d) 449. The question presented in said bill was discussed in the original opinion.

Waiving the informality in the bill, and assuming that the substance of the instrument offered is sufficiently certified, we think the bill presents no error. Appellant's defense was alibi. Two witnesses who worked at the post office testified that they saw appellant at the post office several miles away from the

scene of the kidnapping at the time State's witnesses fixed the offense. It is certified in the bill that the "cost ascertainment sheet" showed: (1) That said record showed that the two witnesses were working in the post office at the time of the alleged kidnapping; (2) that according to said record that was the only occasion the two witnesses were on duty at the same time; (3) that the record was compiled from original entries made by the two witnesses themselves simultaneously with the occurrences which the entries reflected. When the document was offered the State objected on the ground that it was hearsay and immaterial. It will be observed that it is not certified in the bill, nor claimed, that any entry reflected by the "sheet" was made by either of the witnesses in connection with any business either of them had with appellant or which in any way reflected appellant's presence in the post office at the time claimed by the witnesses. The entries only showed the presence of the witnesses together in the post office at said time. The entries threw no light on the claim of the witnesses that they saw appellant there. It occurs to us that a similar state of affairs would arise if A and B while together in an automobile at a certain point on the highway claimed to have seen C rob D, and in order to support their story as to what they claimed to have seen, offered testimony that they were in fact together in an automobile at this certain point, and therefore, saw C rob D. We think the failure of appellant to notice the distinction pointed out has led him to cite authorities which in our judgment do not support his position that the "cost ascertainment sheet" was admissible in evidence. In McCoy v. State, 106 Tex. Cr. R. 593, 294 S. W. 573, accused was charged with murder. His defense was alibi. He claimed to have been in Shreveport on Sunday night, at which time he assisted in taking a young lady to the hospital. The records of the hospital were introduced by the State, said records showing that the young lady was not admitted to the hospital until Monday night, thereby bearing directly on the question of appellant's presence there on Sunday night. In Leach v. State, 80 Tex. Cr. R. 376, 189 S. W. 733, the inquiry was whether Leach was riding on a train on a certain Sunday. A witness would have testified that at that particular time he saw Leach at Sunday school, and this evidence, and the Sunday school records showing Leach's presence at Sunday school, was offered, rejected and held error,—why? The entry on the records showed Leach's presence at Sunday school, not the presence of a witness who claimed to have seen Leach there. Appellant also cites State v. Harris, 64 S. W. (2d) 256—a Missouri case— in which accused was charged with

robbery. The defense being alibi, he offered a receipt given by a witness to accused and the entries in an account book made by said witness tending to show the presence of accused, not the witness, at a place other than where the robbery occurred. The Supreme Court of Missouri held that it was error to reject the evidence, citing among other cases Leach v. State (supra).

For the reasons given it is our opinion that bill of exception number twelve does not reflect error.

Appellant's request for leave to file second motion for rehearing is denied.