No. 60.—WARREN W. MARSHALL, plaintiff in error, *vs.* SPENCER RILEY, defendant.

[1.] To entitle a party to the answers of his adversary, under the Act of 1847, it is only necessary to show that they will be *material* evidence in the cause; he need not state that they are *indispensable*.

[2.] The application for the answers of the adverse party, must be based upon the affidavit of the person applying, or some showing equivalent thereto, which must be recited in the order of the Court, or appear of record.

[3.] No person can be compelled to answer interrogatories, which would subject him to a penalty or forfeiture or punishment for crime, or *have a tendency thereto*.

[4.] If a party submits to answer illegal questions, *under protest*, he waives no right, but may insist on his objections at the hearing; nor can the contents of incompetent testimony, extorted by authority of law, be proven by third persons, who have seen and read it.

Assumpsit, in Bibb Superior Court. Tried before Judge FLOYD, July Term, 1849.

The plaintiff in error brought suit against the defendant, on a promissory note for $150, to which special defence was made that the note was given for services rendered by plaintiff as a practitioner of medicine; that he never was licensed by the Board of Physicians, established by the Statute of the State, and was, therefore, not entitled to sue for and recover compensation for such services.

Pending the trial at July Term, 1849, defendant having previously filed interrogatories for the plaintiff, under the Act of Dec.

17, 1847,* "compelling discoveries at Common Law," demanded the answers of the plaintiff to be filed in office. Plaintiff objected, on the ground that he had various grounds of demurrer to the interrogatories and the testimony thus sought, and if filed, the contents of the answers would be proven, though the demurrer was sustained. The Court ordered the answers to be filed, and defendant excepted.

The following were the interrogatories filed:

"GEORGIA, BIBB COUNTY:

"Interrogatories to be submitted to the plaintiff, under the Statute in such cases made and provided, his testimony being material to the defendant in the case.

"Int. 1, inquired as to the consideration of the note.

"Int. 2. Are you a regular licensed physician of any Medical Board in the State of Georgia? If not, under what authority do you charge fees as a physician?

"Int. 3. (Immaterial.)"

On these interrogatories the Court granted an order requiring the plaintiff to answer.

The answers to these interrogatories being offered by the defendant in evidence, plaintiff objected—

1st. Because the interrogatories are not in conformity with the Statute, in not stating that the discovery sought is indispensable to

---

*An Act to authorize parties to compel discoveries at Common Law.*

"*Be it enacted, &c.* That any party plaintiff or defendant in any action at Common Law, pending in any Superior or Inferior Court of this State, wishing a discovery from the adverse party, to be used in evidence at the trial of such action, may file written interrogatories to such party, and call upon him to answer the same in solemn form, on oath or affirmation; and if upon such interrogatories being filed, it shall appear to the Court, by the oath of the party filing the same, or otherwise, that answers to such interrogatories will be material evidence in the cause, and that the interrogatories themselves are pertinent, and such as the adverse party would be bound to answer upon a bill of discovery in a Court of Chancery, the Court shall allow such interrogatories, and shall make an order requiring the adverse party to answer the same in writing, and in solemn form, on his oath or affirmation; and the answer to such interrogatories, being so given and filed, shall be evidence at the trial of the cause, in the same manner, and to the same purpose and extent, and upon the same condition in all respects as if the same had been procured upon a bill in Chancery for discovery, but no farther or otherwise."

(The remainder of the Act provided for the failure or refusal of the party to answer.)

Marshall vs. Riley.

defendant's defence, and because no affidavit is filed by the defendant, as required by the Statute.

2d. Because an answer by the plaintiff, acknowledging that he had no license, would, under the Statute, subject him to a prosecution for a misdemeanor, or any acknowledgment which might be used as a link in a chain of evidence on such a prosecution.

The Court overruled the first objection, and sustained the second, so far as related to plaintiff's license as a physician, and no farther, remarking, that the Court *might* have sustained the second objection *in toto*, but that it would do the plaintiff no good, as the answers had been filed, and the defendant's attorney having seen them, would be allowed to prove their contents.

To which decisions defendant excepted—

1st. To the overruling the first objection.

2d. To the overruling a portion of the second.

3d. To the holding that any person who had seen the answers, might prove their contents after the answers themselves were ruled out on demurrer.

ANDERSON, for plaintiff in error, cited—

3 *John. Ch. R.* 45.   1 *John.* 543.   4 *Ib.* 509.   2 *Paige*, 601.

STUBBS, represented by CALHOUN, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The taking of the testimony of the plaintiff in this case, was under the Act of 1847, "to authorize parties to compel discoveries at Common Law." It requires that the interrogatories be filed, and then it must be made to appear to the Court where the cause is pending, by the *oath* of the party filing the same, *or otherwise*, that the answers thereto will be material evidence in the suit, and that the questions propounded are pertinent, and such as the adverse party would be bound to answer upon a bill of discovery in a Court of Chancery.

[1.] It may be questioned whether the Legislature intended to authorize an appeal to the conscience of his adversary, where the *aliunde* testimony was sufficient, and in the power of the party. The Statute, however, simply requires that the discovery sought

shall be *material,* and not, in the language of the exception, that it should be *indispensable.*

[2.] That the order to answer should be based upon the *affidavit* of the applicant, or some showing equivalent to this, is manifest. Here, the order does not purport to be founded upon any such evidence, nor does any such accompany the record. We hold, therefore, that the exception, upon this point, was well taken.

[3.] We think, too, that the Court erred in ruling that the answers of the plaintiff might be read as to the consideration of the note sued on. The Act of 1825, subsequently repealed, but revived in 1839, forbids any person. to practise physic or surgery, or any of the branches thereof, or in any case to prescribe for the cure of diseases, *for fee or reward,* unless licensed to do so; and for the first violation of the law, a fine not exceeding $500 is imposed, and for the second offence, imprisonment not exceeding the term of two months. *Cobb's Analysis,* 602. And it is farther enacted, that on the trial of all indictments under the Act, it shall be incumbent on the defendant to show that he has been licensed, to exempt him from punishment. *Ib.* To compel the defendant, therefore, to testify that the note which was the subject matter of the action, was given to him as a fee for services rendered in curing a cancer upon the wife of Riley, would be to furnish *all* the testimony needed to convict him under the Statute ; the presumption being, according to its provisions, that he had no license.

The maxim of the Common Law, *nemo tenetur seipsum prodere,* that no man is bound to accuse himself of any crime, or to furnish *any* evidence to convict himself of any crime, is founded in great principles of constitutional right, and was not only settled in early times in England, but was brought by our ancestors to America, as a part of their birthright. "This," says Mr. *Cooper,* "is a maxim of the law, founded upon the principles of British freedom, and may be considered as one of our constitutional rights and privileges. It has been encroached upon in arbitrary reigns, and particularly while the Court of Star Chamber was in existence, of which the process and pleading were the same as in Chancery, but extended even to criminal informations, to which the party accused was obliged to answer on oath. *This drew it into the greatest odium, and was the principal cause of its downfall.* The Court of Chancery, however, has never compelled a party to

Marshall *vs.* Riley.

criminate himself, and the fate of the Court of Star Chamber has, perhaps, made it still more strict in the observance of this rule of pleading.   And it is so fundamental a rule, that Equity, which interferes in almost every other case, to prevent the application of the general law from working injustice, will not interfere against this rule."   *Eq. Pl.* 203.

It was the great boast of Lord *Hardwick,* says Judge *Story,* that the general rule, established with great justice and tenderness in the law of England, is fully recognized and acted on in Courts of Equity, that no person shall be obliged to discover what may *tend* to subject him to a penalty or punishment, or to that which is in the nature of a penalty or punishment.   *Harrison vs. Southcote,* 2 .*Ves.* 394.

In *Williams vs. Hannington,* (3 *Bro*. *C. C.* 35,) the Lord Chancellor held, not only that answers would not be required, which would subject a party to a penalty or forfeiture or punishment for crime, or which would *tend thereto ;* but that the defendant need not plead or demur to the bill, but upon exceptions to the answer he might insist he was not liable.   See, also, as to the right of the party to object to discovery in a matter *tending* to criminate him, or expose him to penalties, &c.   *Glynn vs. Houston,* 1 ·*Keen,* 329.   *United States vs. Twenty-eight Packages, Gilpin,* 306. *Bishop of London vs. Fytche,* 1 *Bro. C. C.* 97, *and note.   Wigram on Discovery, Prop.* 2, 1 *Amer. Ed.* 82, *et seq.*   2 *Stor. Eq. Jur. ch.* 42, §1494, *and note, and numerous cases there cited.*

By reference .to the Act of 1847, it will be perceived that the answers to the interrogatories required to be given, are "to the same purpose and extent, and upon the same condition, *in all respects,* as if the same had been procured upon a bill in Chancery for discovery, *but no farther or otherwise.*"

[4.] Nor is it any proper justification, in the opinion of this Court, to compel the party to make discovery which would inevitably tend to criminate him, that the answers had already been taken and filed, and that the contents might be proven by the attorney of the opposite party, or any one else who had read them. The party called on to answer, under this Act, may refuse to do so, and risk the consequences, or else he may answer under protest as to the legality of the testimony, and insist upon his objections on the trial.   By pursuing the latter course, as was done in the present case, he waives no legal right ; and should his objec-

tions be sustained, the evidence thus extorted will be rejected at the hearing.   Nor will it be competent to allow its contents to be proven by others.   It would be oppressive in the extreme, to extort illegal evidence, upon an *ex parte* application and under menace of attachment; or, if he be the defendant in the action, under the penalty of having his plea set aside and judgment given against him by default; or, if the plaintiff, his suit dismissed with cost; and yet on the trial to permit him to be prejudiced for having obeyed the mandate of the Judge ordering him to answer.   A practice like this cannot be warranted by the Statute, and is contrary, as we have seen from the case in *Brown's Reports*, to analogous proceedings in Equity.

It is argued, that the exemption of the witness is a personal privilege, and cannot be claimed for him by his counsel; but Marshall *protested, in person,* against answering the interrogatories, and this is a sufficient reply to the suggestion, even if it were well founded in law.

It is farther insisted, that if the prosecution to which the party is exposed, is barred by lapse of time, that the privilege ceases and he is bound to answer; and the record shows, that more than ten years had elapsed from the date of the note which was taken as a fee, to the order requiring the plaintiff to answer; and it is admitted that two years is the statutory bar for a misdemeanor like this.

We recognize this principle.   In *Williams vs. Farrington,* already cited, it was held, that inasmuch as the time for suing the penalty had expired at the time of the answer being put in, the defendant was liable to answer.   See, also, *Corp. Trin. House, vs. Burge,* 2 *Sim.* 411.   *Davis vs. Reid,* 5 *Sim.* 443.   *Stor. Eq. Pl. ch.* 11, §598.   But no such question as this has been made and adjudicated in the Court below.   The proof was allowed for the reason, that the answers being filed, their contents might be testified to by the attorney of the opposite party, or any one else who had seen and read them, and that consequently a decision excusing the party from being examined, *would do him no good.*

But there is another and perhaps a more satisfactory answer to this position, which is this:   The Statute of Limitations in criminal cases in Georgia, does not run in favor of an offender who absconds from the State, or so conceals himself that he cannot be arrested.   *Prince,* 663.   Nor does it extend to cases where the

offender is unknown.   *Pamp. Law of* 1838, *p.* 166.   And while it would be dangerous to assume that this particular case, or any other, did not fall within these exceptions, it would be inconvenient, if not totally impracticable, to go into these collateral issues upon a question as to the competency or admissibility of testimony.   We cannot do otherwise, therefore, than send the case back for another trial.

Let the judgment be reversed and the cause remanded.