### 2780. CENTRAL OF GEORGIA RAILWAY CO. *v.* WILLINGHAM.

1. The certiorari presented only a question of law, and should have been terminated by a final judgment.

2. A railroad company or other common carrier may recover the difference between the amount of freight first charged for a shipment and collected from the consignee and the higher amount which should have been charged and collected under the regulations of the railroad commission. The rates of freight fixed by the railroad commission must be observed; and if a lower rate of freight than that allowed by the railroad commission is collected, an action to recover the remainder of the true amount is maintainable, even though the consignee accepted the freight and paid the smaller amount in good faith, and although in his dealings

5

with his customers he has conducted his business upon the basis of the rate of freight collected.

3. The person who is entitled to maintain an action to recover an over-charge in freight, or liable to pay a deficiency in the amount charged, if the carrier delivers the shipment without collecting the rate prescribed by the railroad commission, is the owner of the shipment at the time that the shipment is released and possession surrendered by the carrier. And as the consignee is presumably the owner of a shipment which is delivered to him, prima facie the consignee, and not the consignor, is liable for the deficiency when a carrier fails to charge and collect the full amount of freight as prescribed by the rates of the railroad commission.

DECIDED FEBRUARY 15, 1911.

Certiorari; from Fulton superior court—Judge Pendleton. May 18, 1910.

*Payne, Little & Jones, M. F. Goldstein,* for plaintiff.

*Grover C. Middlebrooks,* for defendants.

RUSSELL, J. The Central of Georgia Railway Company brought suit to recover from E. G. Willingham & Sons an amount alleged to be due on freight charges. The case was tried upon an agreed statement of facts, which was substantially as follows: Three cars of lumber were bought by E. G. Willingham & Sons from T. E. & A. W. Whittle of Thomaston, Georgia, which the latter agreed to deliver free on board cars, Atlanta, Georgia. In other words E. G. Willingham & Sons were to pay the freight on the lumber from Thomaston, Georgia, to Atlanta, and deduct the amount thereof from the purchase price of the lumber, and only pay T. E. & A. W. Whittle the remainder of the purchase price. The lumber, in due course, was shipped, and E. G. Willingham & Sons paid the agent of the Central of Georgia Railway Company at Atlanta the amount of freight charged and demanded, and took possession of the lumber, and thereafter paid the shippers at Thomaston the purchase price of the lumber, less the freight charges paid to the railway company. Afterwards the railway company notified E. G. Willingham & Sons that the amount of freight charged was $12.35 below the amount of freight which should have been charged, at the rate prescribed by the railroad commission. That the rate charged is $12.35 less than the rate prescribed by the railroad commission was admitted by Willingham & Sons, but they assert that they were in ignorance of this fact until after they had paid for the lumber.

Under this agreed statement of the facts, we think the defendants were liable for the difference between what they paid as freight and

what they should have paid under the rate prescribed by the railroad commission. It is not within the power of a railroad company and a shipper to agree for a shipment to be carried at a less rate than that prescribed by the State railroad commission, because such an agreement would affect the rights of other shippers, and would be discriminatory against those who paid the prescribed rate. Civil Code (1910), § 2629. Such an agreement would be just as illegal as for the railroad company to overcharge the shipper. In *Georgia Railroad* v. *Creety,* 5 *Ga. App.* 424 (63 S. E. 528), we held that the carrier could recover from the shipper, on an interstate shipment, the difference between the amount collected and the rate fixed by the interstate railroad commission. There seems to be no difference, so far as the existence of a right of action is concerned, between the point involved in the case at bar and the question ruled in that case, except that in that case an interstate shipment was involved, while the present writ of error concerns an intrastate shipment. In that case, as in this, the freight charges demanded were paid, in good faith, and the party paying them shaped his business accordingly, and the facts were such that the failure to collect the proper rate of freight in the first instance worked an injury to him which could not be repaired.

Upon the hearing the judge sustained the certiorari in this case and remanded the case for another trial. We think this was error. If questions of fact were to be reviewed as being involved in the case, the certiorari should have been dismissed, because there had been no appeal to a jury in the justice's court, and the remedy which should have been first invoked was appeal, and not certiorari. In this case, however, the only issue is one of law, and the superior court should have rendered a final judgment. In *Georgia Railroad* v. *Creety,* supra, Judge Powell in delivering the opinion of the court said: "Though a common carrier, by mistake or otherwise, quotes a shipper a rate lower than that stated in the schedules, and delivers the goods upon the payment of the charges calculated according to the rate so quoted, the carrier may nevertheless thereafter demand of the *shipper* the difference between the rate collected and that which should have been collected." Creety was the owner as well as the shipper. This ruling fixes the rights of the plaintiff carrier in this case, unless a distinction can be drawn between an interstate shipment and an intrastate shipment,—in other words,

between due observance of the rules of the interstate-commerce commission and like observance of the rules of the railroad commission of the State of Georgia. Obedience to the rules of the railroad commission of Georgia, on the part of every carrier doing business in this State, with respect to every shipment between points wholly within the State, is as much required and as essential to the public interest as obedience to the rules of the interstate-commerce commission. If a carrier makes an overcharge on a shipment which originates and ends within the State of Georgia, he is guilty of extortion. Civil Code (1910), § 2628. If he makes an undercharge, the effect of this is to discriminate against shippers who pay the rates prescribed by the railroad commission, and it is in violation of a rule of the railroad commission, which is in effect a law of the State and enforceable as such. Under Rule No. 3 of the general rules of the railroad commission, a railroad company can not reduce a rate for one person without automatically reducing this rate as to every other person or place affected by the rate. It is the duty of the State courts to enforce alike the rules and rates of both the interstate commission and of the railroad commission of Georgia; but obviously, in preserving the inherent rights of the State to regulate transportation within the limits of Georgia, there should be no relaxation in the observance and enforcement of the rules of the State railroad commission, because, as to intrastate shipments the State courts, in most instances, have exclusive jurisdiction of suits arising upon violation of rules or rates of the railroad commission of Georgia. It is therefore the right and duty of a railroad company, when it discovers that too much freight has been charged and collected, to refund at once the overcharge, and if too little has been charged and collected, to endeavor to collect the amount of the deficiency. The defendants do not insist that this is not true, nor that the amount of the deficiency involved in this case is not collectible, but say that under the evidence the carrier can not recover from the consignees,—that the liability is upon the consignors, and not upon the consignees.

Conceding, then, that the railway company has a right of action, and that it should recover either of Willingham & Sons or of T. E. & A. W. Whittle, of whom should payment be required, of the former or of the latter? The answer to this question does not depend upon the relation the party from whom the freight was

collected sustained to the carrier, or upon the independent obligations existing between the person who paid the freight and a third person. It is immaterial whether the party who paid the freight was consignee or consignor. The person who is entitled to maintain an action to recover an overcharge in freight, or liable to pay a deficiency in the amount charged, if the carrier delivers the shipment without collecting the rate prescribed by the railroad commission, is the owner of the shipment at the time that the shipment is released and possession surrendered by the carrier. This must be the true rule, because the lien of the carrier for his freight attaches to the shipment and affects the true owner alone. In this case there can be no issue of fact as to ownership, although it is insisted that Willingham & Sons bought the lumber free on board the cars at Atlanta, Georgia. When the Whittles delivered the three cars of lumber to the railway company consigned to Willingham & Sons, nothing to the contrary appearing, this was delivery of the lumber to an agent of Willingham & Sons,—to wit, the carrier. It is admitted that when the lumber reached Atlanta it was delivered by the carrier to Willingham & Sons and accepted by them. The payment of a portion of the freight by Willingham & Sons (it having been agreed between the Whittles and Willingham & Sons that the freight was a part of the purchase price) was merely an attempt to comply with one of the stipulations of the contract of purchase; and Willingham & Sons having agreed that they would pay the freight and deduct it, it was their duty to pay the correct amount. We hold that as a general rule the owner of the shipment is the proper party to proceed to collect an overcharge, and is the party liable for any deficiency in the amount charged on a freight shipment; but even if Willingham & Sons were not the owners, or if their title in the lumber at the time they accepted it could be questioned, it appears to us that they would still be liable in this case, because they covenanted with the consignors to pay the freight charges; and by that must be understood the charges fixed by the railroad commission of Georgia, and not a greater or less amount. If they profited by an undercharge, they could not keep any part of the amount that should have been charged. If they had lost anything by paying an overcharge they could recover it, while the Whittles could not. Under the law, and their agreement with the

Whittles, Willingham & Sons should pay the freight and look to the Whittles for reimbursement. *Judgment reversed.*