26612. 1024 PEACHTREE CORPORATION, d/b/a METRO THEATRE, et al. v. SLATON et al.

ARGUED JULY 13, 1971—DECIDED OCTOBER 7, 1971.

*Heiskell, Donelson, Adams, Williams & Wall, Frierson M. Graves, Jr.,* for appellants.

*Hinson McAuliffe, Solicitor, Thomas E. Moran, Tony H. Hight, W. Baer Endictor, Thomas R. Moran,* for appellees.

ALMAND, Chief Justice. This case was commenced as a civil action by the District Attorney of the Atlanta Judicial Circuit and the Solicitor of the Criminal Court of Fulton County alleging that the appellants (the defendants below) were exhibiting to the general public a motion picture film

entitled "Sandra—The Making of a Woman," which was obscene within the meaning of *Code Ann.* § 26-2101. Named as defendants were 1024 Peachtree Corporation which operates the Metro Theater in Atlanta, Georgia, and six individuals who were identified as officers of the corporation or employees of the theater. The complaint alleged that the appellants were in joint control and possession of the film "Sandra—The Making of a Woman," that they had advertised in the local Atlanta newspapers the showing of the film to the public on a fee basis, and that they were showing the film to members of the general public. The complaint further alleged that the exhibition of the film constituted a violation of *Code Ann.* § 26-2101, "in that the dominant theme of the motion picture film . . . considered as a whole, and applying contemporary community standards, appeals to the prurient interest in sex and nudity, and that the said motion picture film is utterly without any redeeming social value whatsoever, and transgresses beyond customary limits of candor in describing and discussing sexual matters." There followed a description of the sexual activities depicted in the film. Finally, the complaint alleged that under the law applied to such matters an adversary hearing to determine the question of obscenity must be had prior to the seizure of the film and the destruction thereof. The prayers were for service on the appellants; the issuance of a rule nisi; that the film be declared obscene and subject to seizure; and that the appellants be temporarily and permanently enjoined from exhibiting the film within the jurisdiction of the court. The complaint was filed on October 21, 1970, and on the same day a judge of the Fulton County Superior Court signed an order requiring the defendants to show cause before him two days thereafter why the prayers of the complaint should not be granted. The matter came on for a hearing on October 23, 1970, and was continued from time to time, with portions of the hearing being conducted on five separate days, and ended on November 23, 1970. On that day the trial judge, having viewed the film and heard the testimony of four witnesses

for the appellants, ruled that he found probable cause to believe the film "Sandra—The Making of a Woman" was obscene as a matter of fact and as a matter of law. He ordered one copy of the film seized and preliminarily restrained and enjoined the defendants from distributing or exhibiting the film within the jurisdiction of the court. The order was certified for immediate review and the defendants appeal therefrom.

■ Appellants enumerate as error the finding of "probable cause" as the basis for the trial court's order. The film was viewed by the trial judge who found that sexual conduct was "graphically demonstrated in the close up camera shots and scenes of Sandra, while completely nude, having sexual intercourse with nude men on numerous occasions throughout the entire film, and the cunnilingal act of Phil on Sandra, and Sandra masturbating." This, the court said gave it "probable cause to believe that the picture film 'Sandra— The Making of a Woman' is obscene as a matter of fact and as a matter of law. . ."

We have viewed the film ourselves, and the trial judge's description of the movie and of the sexual conduct portrayed therein is accurate. Although the film has a plot and it does contain some non-sexual footage, the plot obviously is nothing but a contrivance to link together the various sexual experiences of Sandra, the principal character. Practically from the first frame, the film is dominated by nudity and sex, and we are unable to perceive how its appeal could be to anything but the prurient interests of its viewers.

Although we regard "Sandra" as hardcore pornography, the ruling we review here is not an order finding the film obscene, but merely a finding of probable cause. We view the finding of probable cause as tantamount to a determination that the district attorney had made out a prima facie case, since the finding and the resultant order did nothing more than preserve for a jury the ultimate question of whether "Sandra" is obscene. "A 'prima facie case' is that state of facts which entitles the party to have the case go to the jury." *Criswell Baking Co. v. Milligan*, 77 Ga. App.

861, 870 (50 SE2d 136); 33 Words and Phrases, p. 543. We agree with the trial judge that a jury should now decide whether this film is obscene.

■ Appellants contend that the trial court erred in conducting a hearing in the absence of a statute containing certain "built-in safeguards" against curtailment of constitutionally protected expression. They claim that such a statute is demanded by a number of decisions of the U. S. Supreme Court, and they cite in support of this position Blount v. Rizzi, 400 U. S. 410 (91 SC 423, 27 LE2d 498); Teitel Film Corp. v. Cusack, 390 U. S. 139 (88 SC 754, 19 LE2d 966); Freedman v. Maryland, 380 U. S. 51 (85 SC 734, 13 LE2d 649); Quantity of Books v. Kansas, 378 U. S. 205 (84 SC 1723; 12 LE2d 809); Marcus v. Search Warrant, 367 U. S. 717 (81 SC 1708, 6 LE2d 1127); and Kingsley Books, Inc. v. Brown, 354 U. S. 436 (77 SC 1325, 1 LE2d 1469). Appellants say that such statute must include the following: (1) sensitive tools for separating protected expression from obscenity; (2) specific procedural safeguards; (3) provision for a searching hearing on obscenity before any prior restraint; (4) provision for an adversary hearing; (5) provision for notice and hearing before any preliminary or temporary injunction; (6) provision requiring a prompt hearing after answer is filed by the theater owner; (7) provision for a prompt judicial decision within a certain time; and (8) provision for prompt appellate review. No such statute exists in Georgia, and appellants contend that our regular rules of civil procedure cannot constitutionally be applied to a case involving First Amendment rights, because they lack the "built-in safeguards" enumerated above. We reject this view. As we read the federal cases cited by appellants, they are merely illustrative of the rule that there must be prompt judicial participation in any determination of obscenity. We cannot agree that these cases, when read separately or in conjunction, require that the states enact special statutes establishing procedures exclusively for use in cases which involve First Amendment rights.

In the case at bar, we perceive no violation of the appel-

lants' First Amendment rights in the proceedings thus far conducted. No restraint on the exhibition of the film was imposed until the trial court's order issued after an adversary hearing on the question of obscenity. The restraint that was imposed is temporary. "The purpose of an interlocutory injunction is preliminary and preparatory; it looks to a future final hearing, and while contemplating what the result of that hearing *may be,* it does not settle what it *shall be." Milton Frank Allen Publications v. Georgia Assn. of Petroleum Retailers,* 223 Ga. 784, 788 (158 SE2d 248). "The granting and continuing of injunctions always rests in the sound discretion of the trial judge, according to the circumstances of each case. *Code Ann.* § 55-108. *Loadman v. Davis,* 210 Ga. 520, 522 (81 SE2d 465)." *Green v. Fuller,* 223 Ga. 204 (154 SE2d 220).

It should be noted that the procedure followed in the trial court is the same as that employed in two earlier cases involving allegedly obscene films and approved by this court against substantially the same contentions. *Walter v. Slaton,* 227 Ga. 676 (182 SE2d 464); *Evans Theatre Corp. v. Slaton,* 227 Ga. 377 (180 SE2d 712). The procedures employed thus far, resulting in the issuance of an interlocutory injunction, are legitimate and abridge no rights guaranteed appellants by the First and Fourteenth Amendments.

We note that the trial court's order was for a "preliminary" injunction but that it contains no limit as to time. In the *Walter* and *Evans Theater* cases we directed that the trial court orders be modified so as to show that they were to remain in force only until the final hearing of the case by a jury. The same direction is given in this case.

■ We find no merit in appellants' additional enumerations of error, to wit: that the district attorney failed to carry the burden of proof in that he introduced no evidence other than the film itself; that the petition in effect asked for issuance of a search warrant; that the original complaint was not verified, although this was done by amendment; that the hearing below was a use of equity to

administer criminal law; that issuance of the interlocutory injunction constituted a prior restraint; that the trial court's show cause order requiring appellants to produce the film for viewing amounted to self-incrimination; and that the district attorney failed to show that irreparable harm would result from continued exhibition of the film.

*Judgment affirmed with direction. All the Justices concur.*