## 47169. GOOD v. THE STATE.

HALL, Presiding Judge. Defendant theater owner appeals from his conviction for exhibiting obscene motion pictures. His primary enumeration of error is the denial of his motion to suppress the film on the ground of illegal seizure. The State concedes that the seizure was made under the authority of an arrest warrant based only on the affidavit of the district attorney stating that the films were obscene and that there was no prior adversarial hearing to determine the issue of obscenity.

After some years of confusion in the law, it now appears that a prior adversarial hearing to determine obscenity is not a constitutional prerequisite for seizure of materials as evidence *in a criminal prosecution.* Milky Way Productions v. Leary, 305 FSupp. 288, affirmed 397 U. S. 98; United States v. Fragus, 428 F2d 1211 (5th Cir.); Russ v. Hand, No. 14724, March 1, 1971 (N. D. Ga.). Cf., A Quantity of Books. v. Kansas, 378 U. S. 205 (84 SC 1723, 12 LE2d 809); Marcus v. Search Warrant, 367 U. S. 717 (81 SC 1708, 6 LE2d 1127); Kingsley Books, Inc. v. Brown, 354 U. S. 436 (77 SC 1325, 1 LE2d 1469); *Metro Theatre v. Slaton,* 228 Ga. 102 (184 SE2d 144); *Walter v. Slaton,* 227 Ga. 676 (182 SE2d 464); *Evans Theater Corp. v. Slaton,* 227 Ga. 377 (180 SE2d 712), all of which involve condemnation or injunction proceedings.

The test of lawful seizure, then, is whether it was made incident to a lawful arrest or pursuant to a lawful search warrant; and the usual issues, such as probable cause, are involved. Here there was an arrest warrant. The

defendant contends that a search warrant was essential. We do not believe the distinction is material in this type of obscenity case. The film was exhibited publicly. There was no "search" necessary. The issue is whether there was probable cause to believe the film was obscene—the only basis for a criminal prosecution and therefore the only basis for the issuance of an arrest warrant.

A major difficulty in this case is that the sufficiency of the warrant does not appear to have been argued. We have no transcript of the motion to suppress, but based on the contentions made on this appeal, the chief issues were considered to be the necessity for a search warrant and for a prior adversarial hearing. However, a copy of the warrant is in the record. It is clearly insufficient on its face to show probable cause. It merely states the bold conclusion of the affiant district attorney (who admitted at the trial he had never seen the film) that the defendant had exhibited two named films which were obscene material.

"Admission in evidence of allegedly obscene motion picture films seized under the authority of a warrant issued by a justice of the peace on a police officer's affidavit giving the films' titles, and stating that he had determined from personal observation of the films and of the theatre's billboard that they were obscene, was erroneous, as the issuance of the warrant without the justice of the peace's inquiry into the factual basis for the officer's conclusions fell short of constitutional requirements demanding necessary sensitivity to freedom of expression." Lee Art Theater v. Virginia, 392 U. S. 636 (88 SC 2103, 20 LE2d 1313).

The admission of the film was erroneous and the balance of the evidence cannot save the verdict. Under our Constitution, the test of obscenity is "whether to the average person, applying contemporary community standards, the dominant theme of the material *taken as a whole* appeals to prurient interest." (Emphasis supplied.) Roth v. United States, 354 U. S. 476, 489 (77 SC 1304, 1 LE2d

1498). We cannot conceive of how a jury could apply the Roth test to a film without having seen it, i.e., make a sophisticated value judgment on the libidinous *effect* of a visual experience, without having had the experience. The most detailed and apparently objective second-hand oral description could not have the same impact and would necessarily be colored by the effect on the narrator. However, even if we made the dubious assumption that the oral evidence of several witnesses might *support* a verdict, it could hardly *demand* one.

The illegal admission of the film itself cannot be held harmless error. In a criminal case, "before a constitutional error can be held to be harmless the court must be able to declare its belief that it is harmless beyond a reasonable doubt." Chapman v. California, 386 U. S. 18 (2) (87 SC 824, 17 LE2d 705, 24 ALR3d 1065). This court cannot say beyond a reasonable doubt that the jury did not base its verdict upon the inadmissible film.

The trial court erred in denying the motion to suppress the film and its admission was not harmless error. In view of this determination, it is unnecessary to consider defendant's other enumerations of error.

*Judgment reversed. Bell, C. J., Eberhardt, P. J., Clark and Stolz, JJ., concur. Pannell, Deen and Quillian, JJ., dissent. Evans, J., not participating.*

ARGUED MAY 3, 1972—DECIDED DECEMBER 4, 1972— REHEARING DENIED DECEMBER 20, 1972.

*Calhoun & Kernaghan, William C. Calhoun,* for appellant.

*R. William Barton, District Attorney,* for appellee.

PANNELL, Judge, dissenting. The defendant was convicted of exhibiting obscene motion pictures in a theatre operated and controlled by him and he appeals to this court seeking a reversal on a number of grounds relating primarily to the overruling of his motion to suppress the motion picture films seized by the arresting officers, one of which was

being exhibited at the time of the arrest, the admission and rejection of evidence, the overruling of demurrers to the indictment, and other grounds.

I find nothing in the briefs or in the record to substantiate the statement in the majority opinion that: "The State concedes that the seizure was made under the authority of an arrest warrant based only on the affidavit of the district attorney stating the films were obscene and that there was no prior adversary hearing to determine the issue of obscenity"; although from the arguments, we might by "reading between the lines" decide this case on the assumption there was no adversary hearing prior to the seizure of the films under a search warrant and that no *search* warrant was issued. The defendant was indicted for the selling, advertising, publishing and exhibiting of certain obscene materials, to wit, a motion picture, "Her, She and Him" and portions of a certain motion picture entitled "Southern Comfort," knowing the obscene nature thereof. Upon the trial of the case, in his testimony, the defendant admitted that the films seized were a film entitled "Her, She and Him" and a trailer advertising "Southern Comfort" and that he had exhibited these films in his theatre on the times and occasions in question.

1. There was no error in overruling the demurrer to the indictment.

2. The testimony of witnesses, as to what they had viewed on the screen in the defendant's theatre as paying customers, was not inadmissible on the ground that it was tainted by the subsequent alleged unlawful seizure of the films being exhibited, and the fact that the witnesses had viewed the alleged illegally seized film a short time prior to giving their testimony upon the trial. See in this connection Monroe v. United States, 234 F2d 49, 57, cert. denied, 352 U. S. 873; McGuire v. United States, 273 U. S. 95 (47 SC 259, 71 LE 556); United States v. Lee, 274 U. S. 559 (47 SC 746, 71 LE 1202); Lord v. Kelley, 223 FSupp. 684; Zap v. United States, 328 U. S. 624 (66 SC 1277, 90 LE 1477), judgment vacated on rehearing and indictment ordered

dismissed on other grounds, 330 U. S. 800; also The Journal of Criminal Law, Criminology, and Science, Vol. 55, No. 3, pp. 307-321. Nor was this testimony inadmissible on the ground that the alleged illegally seized films would be the highest and best evidence of what was exhibited on the screen, the defendant being charged with the exhibition of obscene materials, and not with possession thereof.

3. Assuming, without deciding, that the seizure of the films, one of which was being exhibited, and the other was in the projection booth, at the time of the defendant's arrest in the theatre on an arrest warrant against the defendant charging him with distributing obscene materials, was an illegal seizure and that the overruling of the motion to suppress the films as evidence and admitting the films in evidence was in error because the warrant for arrest of defendant was issued without a showing of probable cause to the issuing magistrate, we are of the opinion that such error was harmless here, where the evidence properly admitted, together with any evidence improperly excluded, demands a finding in accordance with the verdict rendered. While all errors are said to be presumptively prejudicial (*Tilton v. State*, 5 Ga. App. 59 (62 SE 651); *Barrow v. State*, 15 Ga. App. 690 (84 SE 204)), to be cause for new trial or the setting aside of a verdict, the error must be such as induced or contributed to erroneous findings, with the probability of a different result on another trial (*Daugherty v. Savannah &c. R. Co.*, 1 Ga. App. 393 (58 SE 230)), and where the verdict found is demanded by the evidence properly before the jury, and evidence erroneously withheld could not legally change the result, the verdict will not be set aside because of the erroneous admission of evidence. *Hall v. State*, 8 Ga. App. 747 (3) (70 SE 211); *Central of Ga. R. Co. v. Willingham,* 8 Ga. App. 817 (4) (70 SE 199); *Greene v. Central of Ga. R. Co.,* 112 Ga. 859 (2) (38 SE 360). While this rule must be applied with caution (*Atlantic C. L. R. Co. v. McLeod*, 9 Ga. App. 13, 25 (70 SE 214)), it is properly applied where there is no legal harm as distinguished from actual harm.

That the appellate courts of this State have the authority to declare materials exhibited obscene as a matter of law under our present statute (*Code* § 26-2101 enacted pursuant to the ruling in the Roth case) was determined by the Supreme Court of this State in *Slaton v. Paris Adult Theatre I,* 228 Ga. 343 (185 SE2d 768). The pictures here involved were exhibited in a regular commercial theatre to paying customers, and the defendant admitted exhibiting the pictures and that he exhibited x-rated movies because he could not make money out of the other kind.

The feature-length film exhibited in the present case depicted various sexual acts in the nude (either simulated or actual) between male and male, between female and female and between male and female, for from one-third to one-half of the entire picture. The remainder of the picture had innocuous scenes. The trailer exhibited was taken almost entirely of a similar exhibition, including one scene of a group of males and females committing sexual acts in the nude (either simulated or actual). While there was testimony of one witness that the feature film showed that a young male and young female forsook their life of homosexual activities with older partners, married and had a child, and that for this reason the film had a social and moral value, this same witness refused to testify that the trailer exhibited has any social or moral value. From the description of all the witnesses we find that the pictures exhibited were pure hard-core pornography with no redeeming moral or social value, that is, that the material presented was obscene because, when considered as a whole, applying community standards, its predominate appeal was to prurient interest and that it was utterly without redeeming social value and went substantially beyond customary limits of candor in describing or representing such matters, and that the exhibition of the films was a commercial exploitation of erotica solely for the sake of their prurient appeal. Our statute bases obscenity on community standards. The test is therefore of communities *which have standards.* We hold that in any community which has any

standards at all, the films exhibited in the present case would be obscene within the definition of our statute.

In the case of Chapman v. California, 386 U. S. 18 (87 SC 824,·17 LE2d 705, 24 ALR3d 1065), the court, in stating the rule quoted by the majority here, based its application on the fact that the evidence authorized a finding either way, that is, guilty or not guilty. That the jury may have based its verdict upon the "inadmissible" film has nothing to do with the question here, if the verdict was demanded without it.

According to the majority, the testimony of one who views the film would "necessarily be colored by the effect" on the witness. Does that mean that such testimony has no probative value, even though the probable effect of the picture upon the viewer, its appeal to prurient interest, is an ingredient of the offense? The majority hold that unless the jury view the actual film they cannot "make a sophisticated value judgment on the libidinous effect of a visual experience, without having had the experience." Does this mean there can be no conviction in the absence of such viewing by the jury, and that destruction of the obscene matter by the accused would prevent all prosecutions, even though the accused admits the exhibition of the matter described by the witnesses? As I construe it, that seems to be what the majority are holding and if they do so hold, they may be unwittingly granting a haven and refuge to the purveyors of filth. With this I cannot agree.

4. I think the films were admissible for two reasons. (a) In view of the defendant's testimony under oath at the trial that the films seized were exhibited by him in his theatre to the public for a monetary charge, on the occasion in question, which is a solemn admission in judicio, he cannot now be heard to object to their alleged erroneous introduction in evidence. *Sarah v. State,* 28 Ga. 576; State v. Smith, 357 Mo. 467 (209 SW2d 138); State v. Bray (Mo. App.) 278 S. W. 2d 49; Burks v. State, 194 Tenn. 675 (254 SW2d 970); Huskey v. State, 156 Tex. Crim. 604 (245 SW2d 266); Vallee v. State, 158 Tex. Crim. 387 (256 SW2d 846); Rao v.

State, 160 Tex. Crim. 416 (271 SW2d 426). (b) The only grounds asserted in the motion to suppress were (1) there had been no adversary hearing prior to the seizure of the films, and (2) that the arrest warrant against defendant was illegally issued, both of which grounds were argued in appellant's brief. Upon the trial it appeared the films were also seized under an arrest warrant against defendant's projectionist, who was exhibiting the film "Her, She and Him" at the time of his arrest. No attack was made on the seizure under this warrant in the motion to suppress. Failure to include an attack on this warrant in the motion to suppress (assuming knowledge of the warrant and the seizure thereunder) was a waiver of such grounds. *Touchstone v. State,* 121 Ga. App. 602 (2) (174 SE2d 450). And, assuming the discovery by the defendant of this warrant and the seizure under it was not made until the trial, no objection to this warrant or the seizure of the films under it, nor any objection to the films' admissibility on the ground this warrant was illegally issued, was made after the discovery. The films were therefore admissible in evidence.

5. In my view of the case it is unnecessary to pass upon the various enumerations of error relating to the introduction of testimony by the State and questioning its method of proof. However, the view of the majority requires that these matters be passed upon as a guide to the trial judge on the retrial of the case, which they are granting to the defendant. Any ruling in this dissent would be fruitless as it would be without binding authority upon the trial judge. Section I of the Appellate Practice Act (Ga. L. 1965, p. 18, as amended; *Code Ann.* § 6-701) requires that this court "shall in all cases review all judgments, rulings or orders raised on appeal which may affect the proceedings below" except those which are moot. I, therefore, dissent from the majority's failure to comply with the statute and give the trial judge guidance in the retrial of the case.

I am authorized to state that Judge Quillian concurs in this dissent; Judge Deen concurs in the result only.