### 49079. WALTER v. THE STATE.

STOLZ, Judge.

The defendant appeals from his conviction of violations of Code Ann. § 26-2101 (Ga. L. 1968, pp. 1249, 1302; 1971, p. 344). He was tried on a three-count accusation, was convicted on two counts, and received a sentence of 12 months on each count and a fine of $1,000 on each count.

On October 27, 1970, the State of Georgia, through the Fulton County District Attorney and the Fulton

County Solicitor General, brought an adversary hearing in the Superior Court of Fulton County complaining that three films, "Zap", "Innocent Nymph Part II," and "The Virgin Runaway," were obscene, violated Code Ann. § 26-2101, and were subject to seizure by the district attorney and the solicitor general. The petition requested that a rule nisi issue requiring the defendant to show cause on a date certain why the motion pictures should not be declared obscene and subject to seizure, and required the defendant to produce upon the hearing a print of each of the motion pictures. The petition further prayed that the motion pictures be declared obscene and subject to seizure, that the defendants be temporarily and permanently enjoined from exhibiting the motion pictures within the jurisdiction of the court, and that the defendant be temporarily restrained and enjoined from destroying, altering, concealing, or removing the motion pictures beyond the jurisdiction of the court. The defendant was duly served and the matter came on for hearing pursuant to the rule nisi. After hearing evidence, the judge of superior court entered an order finding the films to be hard-core pornography and that the court had the authority under the law to issue a search warrant order based on a finding of probable cause that the films were obscene. The court then ordered the Sheriff of Fulton County to seize one copy of the films, and granted the other temporary injunctive relief sought in the petition. The defendant appealed to the Supreme Court of Georgia. The finding of the trial court was affirmed in that court. *Walter v. Slaton,* 227 Ga. 676 (182 SE2d 464). The solicitor thereafter filed a three-count accusation against the defendant Walter, alleging that on October 21, 1971, the defendant distributed an obscene film entitled "Zap"; that on October 22, 1971, the defendant distributed an obscene film entitled "Innocent Nymph Part II"; and that on October 28, 1971, the defendant distributed an obscene film entitled "The Virgin Runaway." Subsequently, in compliance with the aforesaid court order, a deputy sheriff of Fulton County proceeded to the defendant's place of business to seize the aforesaid films, but did not do so, as is more fully set out

hereinafter. Thereafter, citation for contempt was issued against the defendant requiring him to show cause on a day certain why he should not be adjudged in contempt. At the hearing on the contempt citation, the solicitor attempted to call the defendant to the stand for cross examination. Defense counsel objected and asserted that the defendant could not be compelled to take the stand and testify, as there were pending criminal charges against the defendant involving the matter. The court stated that it was simply giving the defendant an opportunity to explain his conduct in not complying with the court order. The court then stated that it would find the defendant in contempt of court and would confine the defendant to jail until such time as he produced the aforesaid films. Whereupon the defendant agreed to turn the films over to the court or to the district attorney with the understanding that the defendant was doing so involuntarily. The defendant's motion to suppress the evidence thus obtained was overruled, as were his objections to the admission of the films in evidence at the trial of the case.

After the trial by jury, the defendant was found not guilty on one count and guilty on the other two counts. *Held:*

1. Art. I, Sec. I, Par. VI of the Constitution of Georgia of 1945 (Code Ann. § 2-106) states, "No person shall be compelled to give testimony tending in any manner to criminate himself." Code Ann. § 38-416 states that no person shall be compelled "to give *evidence* for or against himself." (Emphasis supplied.)

In *Marshall v. Riley,* 7 Ga. 367, the plaintiff brought suit against the defendant on a promissory note, to which a special defense was made that the note was given for services rendered by the plaintiff as a practitioner of medicine; that he never was licensed by the Board of Physicians, established by the statute of the state, and was, therefore, not entitled to sue for and recover compensation for such services. Prior to trial, the defendant filed interrogatories for the plaintiff, which addressed themselves to the principal defense in the action. The plaintiff objected to answering the

interrogatories because "an answer by the plaintiff, acknowledging that he had no license, would, under the Statute, subject him to a prosecution for a misdemeanor, or any acknowledgment which might be used as a link in a chain of evidence on such a prosecution." The trial court overruled the objection and required answer to the interrogatories. The Supreme Court reversed. Justice Lumpkin, speaking for the court (page 370) noted: "The maxim of the Common Law, nemo tenetur seipsum prodere, that no man is bound to accuse himself of any crime, or to furnish any evidence to convict himself of any crime, is founded in great principles of constitutional right, and was not only settled in early times in England, but was brought by our ancestors to America, as a part of their birthright." It is in full sympathy with this great, great cornerstone of Anglo-Saxon jurisprudence that we view the situation presented by the case at bar. Here, the initial petition brought by the district attorney and the solicitor general sought to declare the motion picture obscene, subject to seizure, and to enjoin the defendant from exhibiting motion pictures in the jurisdiction of the court and from destroying, altering, concealing, or removing the films beyond the jurisdiction of the court. In the initial proceeding, the court found that there was probable cause to believe that each of the films was obscene and hard-core pornography as a matter of fact and as a matter of law. The Sheriff of Fulton County was thereafter ordered to seize one copy of each of the films in the possession of the defendant and to forthwith transport and deliver the same to the custody of the Solicitor General of Fulton County. The defendants, their associates, agents, and employees were restrained and enjoined from distributing or exhibiting or otherwise showing each of the films within the jurisdiction of the court, and were enjoined from removing the same from the jurisdiction of the court, or altering, modifying, cutting or in any way tampering with each of the films before surrendering the same to the sheriff for delivery to the solicitor general. Thus, we are concerned with the defendant's First Amendment rights under the Constitution of the United States. Freedom of speech and press, which are protected by the First Amendment from

infringement by Congress, are among the fundamental personal rights which are protected by the Fourteenth Amendment (Code § 1-815) from invasion by state action. Lovell v. Griffin, 303 U. S. 444 (58 SC 666, 82 LE 949). "Code Ann. § 26-2101 is not violative of the First and Fourteenth Amendments of the United States Constitution on the ground of vagueness. Gable v. Jenkins, 309 FSupp. 998 (4) (N. D. Ga., 1969), affirmed, Gable v. Jenkins, 397 U. S. 592 (90 SC 1351, 25 LE2d 595). .. Code Ann. § 26-2101, supra, is not violative of the First, Fourth, Fifth, Ninth and Fourteenth Amendments of the United States Constitution on the ground that the constitutional right to mere possession of obscene material, recognized in Stanley v. Georgia, 394 U. S. 557 (89 SC 1243, 22 LE2d 542), necessarily implies the right to purchase such material and, hence, the right of others, including appellant, to distribute it." *Gornto v. State,* 227 Ga. 46, 47 (178 SE2d 894), U. S. cert. denied, 402 U. S. 933.

In A Quantity of Books v. Kansas, 378 U. S. 205 (84 SC 1723, 12 LE2d 809), it was held that a warrant of seizure in which 1715 copies of a book were seized prior to a hearing on the issue of obscenity, was unconstitutional under the First and Fourteenth Amendments of the United States Constitution. This decision is predicated on the reasoning that "if seizure of books precedes an adversary determination of their obscenity, there is danger of abridgment of the right of the public in a free society to unobstructed circulation of nonobscene books." P. 213. See also Central Agency, Inc. v. Slaton, Civil Action No. 13025, Northern District of Georgia, Atlanta Division, decided August 26, 1969; and Sherpix, Inc. v. Slaton, Civil Action No. 13024, Northern District of Georgia, Atlanta Division, decided September 2, 1969, holding that before a seizure of alleged obscene material could be made under Code Ann. § 26-2101, an adversary hearing on the question of obscenity must first be had. A similar result was reached by the United States Court of Appeals for the Seventh Circuit in Metzger v. Pearcy, 393 F2d 202.

While the probable-cause hearing before the judge of superior court is a permissible procedure that may be utilized prior to the seizure of obscene materials, it is not

essential. Milky Way Productions v. Leary, 305 FSupp. 288, affirmed 397 U. S. 98; *Good v. State,* 127 Ga. App. 775 (195 SE2d 264) and cits.

The exhibition of an obscene motion picture is a crime involving the welfare of the public at large, since it is contrary to the standards of decency and propriety of the community as a whole. *Evans Theatre Corp. v. Slaton,* 227 Ga. 377 (180 SE2d 712). In *Slaton v. Paris Adult Theatre I,* 228 Ga. 343 (185 SE2d 768), the Supreme Court held that the films involved in that case were "hard core" pornography and that the commercial exhibition of such pictures is not protected by the First Amendment. The Supreme Court of the United States, which in effect affirmed the *Paris* case, supra, held that the states have a legitimate interest in regulating commerce in obscene material and its exhibition in places of public accommodation, including "adult" theaters; further holding that the exhibition of obscene material in such places of public accommodation is not protected by any constitutional doctrine of privacy, and that a commercial theater cannot be equated with a private home. See *Jenkins v. State,* 230 Ga. 726, 728 (199 SE2d 183).

Thus, it appears that we reach an impasse. The case law permits a probable-cause hearing prior to seizure. The defendant's Fifth Amendment rights against self-incrimination must be scrupulously respected. In attempting to resolve the apparent dilemma, we return to the transcript of the hearing on the citation for contempt.

J. D. Spencer, a Fulton County Deputy Sheriff, testified that he went to the Classic Art Theater (the defendant's place of business) to serve a copy of the order in the case of Lewis Slaton and Hinson McAuliffe v. William Walter, directing the seizure of the films "Zap" and "Innocent Nymph Part II," but when he arrived, he saw Mrs. Walter, who told him that neither of the films was at the theater; that he did not see Mr. Walter; that Mrs. Walter said that Mr. Walter knew where the films were, but that she didn't. On cross examination, it was developed that the deputy sheriff was directed to seize the films by search warrant, but that he did not search the premises and that the defendant was not present at the

time he was at the theater and did not conceal the films in any way. There was no evidence of any search of or any further attempt to seize the films prior to the hearing on the citation for contempt. The evidence before the trial judge during the application for citation for contempt, which has been heretofore noted, falls far short of that which is necessary to support an adjudication of the defendant in contempt. Indeed, the only statement that connects the defendant with the films in any way is the hearsay statement by the witness Spencer as to what Mrs. Walter allegedly told him. Of course, this hearsay has no probative value.

We have no sympathy for the purveyors of filth. They represent an element of our society which feeds on the most base of human instincts. Earlier in the opinion, we quoted from *Marshall v. Riley,* 7 Ga. 367, regarding the common-law maxim, that no man is bound to accuse himself of any crime or to furnish any evidence to convict himself of a crime. The opinion further notes that, "'[t]his . . . is a maxim of the law, founded upon the principles of British freedom, and may be considered as one of our constitutional rights and privileges. It has been encroached upon in arbitrary reigns, and particularly while the Court of Star Chamber was in existence, of which the process and pleading were the same as in Chancery, but extended even to criminal informations, to which the party accused was obliged to answer on oath. *This drew it into the greatest odium, and was the principal cause of its downfall.'"* The foregoing quotation is not intended in the slightest way to equate the situation existing in the case sub judice and proceedings in the Court of Star Chamber. However, we do feel that the expression, coming from one of the original justices of our Supreme Court and one of Georgia's most distinguished jurists, provides a timely reminder that the rights won by our ancestors which are so easily taken for granted today, must be zealously guarded and are subject to unwitting encroachment and erosion by the most benevolent among us for the most lofty of motives.

The judge of superior court had full authority to require the defendant to produce a print of each of the films at the initial probable-cause hearing (a civil action).

Likewise, he was fully authorized to find that probable cause existed for the issuance of a search warrant and to grant the temporary injunctive relief sought. However, the judge of the superior court had *no authority* to order the defendant to furnish incriminating evidence against himself on pain of contempt. It is one thing *to enjoin* the alteration or destruction of evidence and its removal beyond the jurisdiction of the court incidental to a *civil action* to declare a motion picture obscene and subject to injunction and seizure, and quite another *to compel* a person charged with a criminal offense *to produce* and deliver to the state the very evidence which will be used against him in the trial of the criminal charges then pending against him for showing the film in question.

"The privilege against self-incrimination has been uniformly construed by the courts as giving the citizen protection as broad as that afforded by the common-law principle from which it is derived. State v. Davis, 108 Mo. 666 (18 SW 894, 32 Am. St. R. 640); Shields v. State, 104 Ala. 35 (16 S 85, 53 ASR 17). The constitutional guaranty protects one from being compelled to furnish evidence against himself, either in the form of oral confessions or incriminating admissions of an involuntary character, or of doing an act against his will which is incriminating in its nature. *Day v. State,* 63 Ga. 667; *Blackwell v. State,* 67 Ga. 76 (44 AR 717); *Evans v. State,* 106 Ga. 519 (32 SE 659, 71 ASR 276); *Dozier v. State,* 107 Ga. 708 (33 SE 418); *Elder v. State,* 143 Ga. 363 (85 SE 97)." *Calhoun v. State,* 144 Ga. 679, 680 (87 SE 893).

There is a vast difference between searching the premises of one suspected of crime and seizing any evidence of guilt, and compelling the person under suspicion to himself produce the evidence upon which he could be convicted. The criterion is, who furnished or produced the evidence? If the person suspected is made to produce the incriminating evidence, it is inadmissible. *Evans v. State,* 106 Ga. 519 (32 SE 659). But if his person or belongings are searched by another, pursuant to a valid search warrant or under circumstances showing the existence of probable cause, the evidence thus discovered may be used against him.

Nothing herein should be construed as in any way

limiting law enforcement officers' seizing obscene materials through the use of search warrants properly prepared, issued and executed. Likewise, nothing herein shall be construed as in any way limiting the authority of the judge of superior court to require the production in court of materials alleged to be obscene in any civil action seeking to enjoin or restrain, either temporarily or permanently, the sale, distribution or viewing of materials alleged to be obscene.

The court erred in overruling the defendant's pretrial motion to suppress, and further erred in overruling the defendant's objection to the introduction of said evidence during the trial in violation of his Fifth Amendment protection against self-incrimination.

2. The remaining enumerations of error are not passed upon.

*Judgment reversed. Webb, J., concurs. Deen, J., concurs specially.*

ARGUED FEBRUARY 12, 1974 — DECIDED APRIL 10, 1974 — REHEARING DENIED APRIL 24, 1974 — 

*Glenn Zell,* for appellant.

*Hinson McAuliffe, Solicitor, Thomas R. Moran,* for appellee.

DEEN, Judge, concurring specially.

1. In his dissenting opinion in the case of *Good v. State,* 127 Ga. App. 775, 781 (195 SE2d 264), Judge Pannell poses the question: "Does this mean there can be no conviction in the absence of such viewing by the jury, and that destruction of the obscene matter by the accused would prevent all prosecutions, even though the accused admits the exhibition of the matter described by the witnesses? As I construe it, that seems to be what the majority are holding and if they do so hold, they may be unwittingly granting a haven and refuge to the purveyors of filth. With this I cannot agree." Presiding Judge Hall, now Justice Hall, in the majority opinion of that case answers: "We cannot conceive of how a jury could apply the Roth test to a film without having seen it, i.e., make

a sophisticated value judgment on the libidinous *effect* of a visual experience without having had the experience."

I concur in the judgment only because I do not find anything in the record indicating that the jury actually viewed the film, and we are therefore bound under *Good,* supra, to reverse.

2. In *1024 Peachtree Corporation, d/b/a Metro Theatre v. Slaton,* 228 Ga. 102 (184 SE2d 144) the Supreme Court holds in a civil adversarial hearing that there was *no merit in the enumeration of error to the effect that the show cause order requiring appellant to produce film for viewing amounted to self-incrimination,* further stating, "We agree with the trial judge that a jury should now decide whether this film is obscene." (Emphasis supplied.)

The court was not per se requiring appellant to produce the film in the normal sense; the court already had custody and possession of the film inasmuch as defendant was holding the film under injunction and court order. I would reverse only for the reasons outlined in Division 1.