**Arthur R. SANDERS and S. S. W. Corp.,
d/b/a Gay Paree Cinema Theatre, a
Georgia corporation,**

v.

**Hinson McAULIFFE, Individually and as
Solicitor General, Criminal Court of
Fulton County and Lewis R. Slaton, Individually and in his official capacity as
District Attorney, Fulton County,
Georgia.**

**Civ. A. No. 18913.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 3, 1973.

---

Glenn Zell, John R. Myer and Elizabeth R. Rindskopf, Atlanta, Ga., Tobias Simon and Elizabeth Du Fresne, Miami, Fla., for plaintiffs.

Thomas R. Moran and Thomas E. Moran, Carter Goode and Morris H. Rosenberg, Atlanta, Ga., for defendants.

## ORDER

EDENFIELD, District Judge.

The only issue in this case which would, under Younger v. Harris,[1] require or even permit interference by this court in the pending state proceedings in this controversy is a very narrow one: It is confined to that part of the state trial court's order which enjoined further exhibition of the movie "Deep Throat" solely on the basis of a preliminary or interlocutory finding of obscenity but before a final determination that the movie was obscene. An injunction under such circumstances would appear to be an invalid "prior restraint" in violation of the First Amendment, and also appears to be a practice which is at variance with the previous procedures employed by these same Georgia defendants in seeking and obtaining state court injunctions in similar fact situations. *See* Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Blount v. Rizzi, 400 U.S. 410, 417, 91 S.Ct. 423, 27 L. Ed.2d 498 (1971); Teitel Film Corp. v. Cusack, 390 U.S. 139, 141–142, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968); Freedman v. Maryland, 380 U.S. 51, 58–59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Kingsley Books, Inc. v. Brown, 354 U.S. 436, 443–445, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957).

In showing why this is true a chronological survey of the facts and the authorities would appear to be in order: On Friday, August 31, 1973, plaintiffs began showing "Deep Throat" commercially at the theatre known as the Gay Paree Cinema, located in Atlanta, Georgia. Immediately on that same date agents of Solicitor McAuliffe executed a criminal search warrant, seized the print of "Deep Throat" then playing, and arrested each and every agent or employee then on the premises, including plaintiff Sanders. All those persons arrested were charged with violations of Ga.Code Ann. § 26–2105(b) and later released after posting bond of $1,000 each. A commitment hearing on those charges was set for Wednesday, September 5, 1973, Civil Court of Fulton County, Criminal Division (Camp, J., presiding),

1. 401 U.S. 37, 91 S.Ct. 749, 27 L.Ed.2d 669 (1971).

at which time probable cause was found that defendants had violated said code section and defendants were bound over for trial.

On the same day defendant McAuliffe's agents returned to the Gay Paree where a second print of "Deep Throat" was then playing and, with a second warrant, seized the print then playing and again arrested all employees on the premises, including plaintiff Sanders, each of whom was again charged with violating Ga.Code Ann. § 26–2105(b) and required to post bond of $1,000 each. In an effort to forestall further arrests, plaintiffs filed this complaint on September 5, 1973. On the following day, Thursday, September 6, 1973, defendant Slaton filed a civil nuisance action in the Superior Court of Fulton County against the plaintiffs in the present federal action. In the state court action defendant sought both a declaration that "Deep Throat" was obscene and a public nuisance and an injunction against its continued showing as provided by Ga.Code Ann. § 72–202. Defendants' contentions that "Deep Throat" was obscene in this state action relied on allegations that the movie was being exhibited in violation of Ga.Code Ann. § 26–2105(b) and thus constituted a public nuisance. (Complaint, ¶ 1.) Defendant Slaton further alleged that the plaintiffs here were "continuously and repeatedly violating Section 26–2105(b)." (Complaint, ¶ 6.)

Following the filing of these complaints, plaintiff Sanders sought a temporary restraining order in the present action which this court denied on September 7, 1973. Throughout this period plaintiffs continued to exhibit "Deep Throat."

As a result of the defendants' state court nuisance complaint a hearing on a motion for preliminary injunction was held on Monday, September 10, 1973, the Honorable Claude Shaw presiding. At the conclusion of that proceeding, Judge Shaw entered an order preliminarily enjoining the continued exhibition of "Deep Throat." The evidence presented at that hearing consisted of the exhibition of the motion picture as well as a stipulation of fact. Judge Shaw denied a motion for stay of the preliminary injunction pending appeal to the Supreme Court of Georgia at the conclusion of that hearing.

In compliance with Judge Shaw's order, plaintiffs discontinued further exhibition of "Deep Throat" at approximately 2:30 p. m. on September 10, 1973, the date of Judge Shaw's order. Plaintiffs have continued since that time to abide by the terms of Judge Shaw's order and have refrained from further exhibition of the film.

Notice of appeal from the September 10, 1973 order to the Supreme Court of Georgia was filed on September 13, 1973; the record was docketed and a motion for stay filed with the Supreme Court of Georgia on September 10, 1973.

The second amended complaint in this action, together with motion for preliminary injunction was filed on September 14, 1973. Thereafter on September 21, 1973 defendants Slaton and McAuliffe filed their answer and first interrogatories to plaintiff Sanders.

Had Paris Adult Theatre I v. Slaton, *supra*, not been decided by the Supreme Court, there would have been certain authorities which would at least appear to sanction the state court injunction herein entered on merely a preliminary finding of obscenity rather than a final determination. For example, in Palaio v. McAuliffe[2] the grant of such an injunction after only a preliminary or interlocutory hearing was affirmed by the Fifth Circuit Court of Appeals. *See also* 1024 Peachtree Corp. v. Slaton, 228 Ga. 102, 184 S.E.2d 144 (1971). But both of these cases were decided before Paris Theatre v. Slaton, *supra*, and in that case, both in the Supreme Court of Georgia and in the Supreme Court of the United States it was made clear that the injunction issued only after a final

2. 466 F.2d 1230 (5 Cir. 1972).

determination of obscenity, not before. For example, in the state court (228 Ga. 343 at 344, 185 S.E.2d 768) the Supreme Court of Georgia said:

> "The rule nisi was duly issued and served in each case, and an adversary hearing was held pursuant thereto on January 13, 1971, before a Judge of the Superior Court of Fulton County. *The parties agreed to waive a jury trial and a preliminary hearing and stipulated that the judgment and order entered by the trial judge would be a final judgment and order in each case.*"

(Ironically, in the present case it appears that the defendants in the state proceedings, now plaintiffs here, expressly requested that the trial judge make his determination of obscenity final. Had he done so, *Paris Theatre* would have been complete authority for his action; but he expressly declined.)

In the Supreme Court opinion in *Paris* the finality of the determination of obscenity before the issuance of the injunction was not only referred to but was made the basis of the approval by the Supreme Court of the Georgia procedure. Thus, at page 55 of 413 U.S., at page 2634 of 93 S.Ct. of the Supreme Court opinion, after expressly approving the Georgia civil procedure employed, the Court went on to point out:

> "Here, Georgia imposed no restraint on the exhibition of the films involved in this case until after a full adversary proceeding and a final judicial determination by the Georgia Supreme Court that the materials were constitutionally unprotected. Thus the standards of Blount v. Rizzi, 400 U.S. 410, 417 [91 S.Ct. 423, 428, 27 L.Ed.2d 498] (1971); Teitel Film Corp. v. Cusack, 390 U.S. 139, 141–142 [88 S.Ct. 754, 755–756, 19 L.Ed.2d 966] (1968); Freedman v. Maryland, 380 U.S. 51, 58–59 [85 S.Ct. 734, 738–739, 13 L.Ed.2d 649] (1965), and Kingsley Books, Inc. v. Brown, *supra,* 354 U.S., at 443–445 [77 S.Ct., at 1328–1330] (1957), were met. Cf. United States v. Thirty-Seven Photographs, 402 U.S. 363, 367–369 [91 S. Ct. 1400, 1403–1405, 28 L.Ed.2d 822] (1971) (opinion of White, J.)."

It would thus appear that the action of the state trial court in entering its injunction against further exhibition of the movie in advance of a final determination of obscenity was probably wrong; but this does not necessarily mean that this court can or should intervene. As the Fifth Circuit said in Duke v. Texas, 477 F.2d 244, 250, 251 (1973), a case which also sought a civil injunction in support of a criminal statute:

> "In issuing its permanent injunction . . . the state trial court may have exceeded [its] authority. . . . But this does not alter our conclusion that the principles of *Palaio* required the plaintiffs-appellees here to meet the pre-conditions of *Younger* before being entitled to invoke the aid of a federal court.

> "First, [the Texas statute] contains a criminal penalty for the violation of the entire statute . . . and thus injunctive enforcement of that statute . . . also constitutes injunctive enforcement of state criminal law.

> "Second, and of paramount importance, the state district court had already acquired jurisdiction over the controversy between the parties here by issuance of its . . . injunction . . . before any application was made to the federal district court. It is a time-tested rubric of our federalism that:

> > 'Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal cases.' Taylor v. Taintor, 1873, 16 Wall. (83 U.S.) 366, 370, 21 L. Ed. 287, 290.

This principle is an integral part of the principles of federalism enunciat-

ed in *Younger*. Its application here dictates that since the state court acquired prior jurisdiction to enforce state criminal law by injunctive remedy, the nature of the state court's jurisdiction should be viewed as of the time that jurisdiction was assumed. Since the initial and continuing jurisdiction of the state court was to enforce through injunctive relief the criminal laws of the State of Texas, *Palaio* requires this Court to determine whether or not plaintiffs here overcame the heavy burdens imposed upon them by *Younger*—demonstrated irreparable injury and an inadequate remedy at law in the state courts. Younger v. Harris, supra, 401 U.S. at 43–44, 91 S.Ct. at 750, 27 L. Ed.2d at 675.

"As used in *Younger*, the concept of 'irreparable injury' in the context of federal intervention in state proceedings in a term of art. First, the mere possibility that the state court order might tend to 'chill' First Amendment rights is not in itself sufficient to justify federal intervention, Id. at 52–53, 91 S.Ct. at 754, 27 L.Ed.2d at 679–680. Second, [the movants] were required only to assert their federal constitutional rights in a single state injunction proceeding, brought in apparent good faith, to enforce a facially constitutional state statute. As *Younger* emphasizes, 'the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single prosecution.' . . . Finally, even in the area of First Amendment rights, special circumstances such as bad faith and harassment . . . must be present before a federal court may intervene in an ongoing state proceeding. . . . There is no showing on this record of bad faith, harassment, or any other special circumstances which would justify federal intervention in this case."

In the present case, as in *Duke*, we see no convincing evidence of either state court harassment or demonstrated irreparable injury or inadequate remedy in the state courts.

In the first place, the respondent state official offered at the hearing in this court to give the movants a final hearing on the obscenity issue "tomorrow" or on any other tomorrow on which the movants announce ready. In the second place, at the time of the hearing in this court the movants actually had a petition for stay pending in the Supreme Court of Georgia which at that time had not been ruled upon. Since the argument in this court, the Supreme Court of Georgia, on October 1, 1973, declined such stay, but it did so on condition and with direction that the trial court place the case "at the head of the trial calendar and proceed with a trial that will lead to a final judgment at the earliest practicable date." The Supreme Court of Georgia further indicated that if the trial court had not made a final determination within sixty days, it, the Supreme Court of Georgia, would entertain a second motion to supercede the trial court injunction. It thus appears that the state courts are in the process of affording movants a speedy determination of their complaints and are fully aware of the prohibitions against any "prior restraint" which may be occasioned by undue delay.

It would appear that in making a final determination as to whether the film is obscene, a jury trial will be required. 1024 Peachtree Corp. v. Slaton, 228 Ga. 102, 184 S.E.2d 144, 146. It also appears that in making the determination of obscenity the Georgia courts will have to apply tests laid down by the Supreme Court in either Miller v. California, 1973, 413 U.S. 15, 93 S.Ct. 2607, 37 L. Ed.2d 419 or Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1, or both. In this respect, *see* United States v. Thevis, (5th Cir., 1973), 484 F.2d 1149.

For all of these reasons the prayers of movants' amended complaint that this court intervene in the state court proceedings, are denied.

It is so ordered.